OPINION OF THE COURT
Kaye, J.
Defendant’s false alibi, standing alone, is in the circumstances presented insufficient to corroborate the testimony of an accomplice, the only direct evidence on which defendant was convicted of felony murder and robbery. The order of the Appellate Division should therefore be reversed, and the order of the trial court dismissing the indictment as to defendant reinstated.
On December 20,1978, Arthur K. Watt, a young serviceman stationed at Fort Leonard Wood in Missouri, flew to New York to spend Christmas with his family. On his way home, he stopped at a bar in upper Manhattan and from there went to a vacant apartment at 2725 Eighth Avenue with other patrons of th,e bar, where he was robbed, stabbed and strangled. Officials discovered his partially burned body the next morning. Charged with this brutal murder, defendant proceeded to trial and rested without presenting any evidence, insisting that the prosecution had failed to corroborate the testimony of its chief witness, Lynette Baker, defendant’s former girlfriend and an admitted accomplice to the crime.
*303 According to Baker, who was also charged with the crime but testified in exchange for leniency,[1] at a few minutes after 1:00 a.m. on December 21,1978, she met her friend James Greer in a bar on Eighth Avenue. Also present in the bar was codefendant Cornell Alston, who was “like a brother” to her. Greer and Baker left the bar shortly before 2:00 a.m. and went to a grocery store across the street to buy cigarettes and beer. Upon emerging from the store, Baker met Alston, who was carrying a duffel bag, and she observed defendant standing behind a door in the hallway of the apartment building at 2725 Eighth Avenue.
As Baker further testified, she and Greer then parted, Greer going home and Baker walking over to defendant, who by this time had been joined by Alston and Watt. When Jerome McEachin subsequently arrived, Alston and Watt went upstairs. A few minutes later, the others followed and the group gathered in a vacant apartment on the third or fourth floor. They talked and drank beer and Watt gave Alston some money to buy marihuana. When Alston left to make the purchase, according to Baker, defendant suddenly grabbed Watt and choked him as McEachin and Baker went through his pockets. McEachin took some travelers checks and began punching Watt when he said he had no cash. Alston returned during the robbery and he and defendant brought Watt into another room, leaving Baker and McEachin in the kitchen. Baker testified she heard defendant or Alston say they had to “take him out” because he knew their names. She saw Alston stab Watt twice, and defendant and Alston then strangled Watt. After leaving the building, Baker, Alston and defendant went to Napoleon Loder’s house in The Bronx. Defendant, who by this time had obtained Watt’s travelers checks, gave them to Alston. Baker testified that Alston subsequently told her he had used the checks at Alexander’s to purchase a snorkel jacket and turtleneck sweater. The People also called Baker’s friend James Greer, who testified that he had met Baker in the bar at about 1:00 a.m. and noticed Alston, McEachin and the young soldier. While he went to the grocery store with Baker upon *304 leaving the bar, he did not see defendant either in the bar or on the street.
Another prosecution witness, Margaret Jennings, who lived in the apartment across the hall from apartment 4S (the crime scene) testified that at 11:00 p.m. on December 20, at least three hours before the crime, she saw defendant leaving apartment 4S. She did not see him again that night. At about 1:00 a.m., she heard noises in the hall and, when she opened her door to investigate, saw Alston carrying a duffel bag. Alston said he came to get in out of the rain and would cause no trouble. Jennings’ son, Melvin Herman, testified that he left the apartment after midnight to purchase cat food and, on his way out, saw two black men on the front stoop, one tall and the other short. But he could not identify defendant or Alston.
The prosecution also introduced defendant’s videotaped statement, made after his arrest on January 31, 1979, in which he said that he had spent the entire evening of the crime at 2300 Lawrence Place in The Bronx, where he lived with Loder. Defendant said he was not in Manhattan at all on the day of the crime and had never been in the abandoned building. Defendant also said he had purchased Christmas decorations at Alexander’s.
Finally, on the subject of the travelers checks, the People presented Grady Houston, Alston’s friend and former employer, who testified that he had arranged for Alston to cash three of the travelers checks at a local market, and the People introduced other checks belonging to Watt that had been cashed at Alexander’s. A handwriting expert testified that the signatures on the checks were forged but he could not determine the identity of the forger.
Following the People’s case, defendant moved to dismiss the indictment because the accomplice’s testimony was insufficiently corroborated. The court reserved decision and defendant rested without presenting any evidence. The jury convicted both defendant and Alston of felony murder and third degree robbery.
The trial court subsequently granted the motion to dismiss, finding Baker’s testimony inadequately corroborated. Commenting on Baker’s credibility, Justice Dontzin *305 “found the quality of her testimony to be appalling, contradictory and inconsistent with prior statements given to law enforcement.” He “perceived her testimony to be motivated on the one hand, by a natural desire to avoid going to jail, and on the other hand, by her open hostility to Moses, who was her former lover and boy friend.” To allow the guilty verdict to stand, said the court, “runs a grave risk that an innocent man has been convicted.”
Though believing the issue to be “close,” the Appellate Division reversed and reinstated the conviction. The majority found that the only evidence corroborating Baker’s testimony was defendant’s false alibi, which betrayed a consciousness of guilt. Relying primarily on People v Deitsch (237 NY 300), the court concluded that this evidence was sufficient. Two concurring Justices found corroboration not only in the false alibi but also in defendant’s presence at the abandoned apartment earlier in the evening, his admission that he had gone to Alexander’s, Melvin Herman’s testimony that he saw two men on the front stoop of the building, and James Greer’s testimony concerning his date with Baker and his failure to see defendant on the street. While we agree with the majority that the only evidence arguably corroborative of Baker’s testimony is the false alibi, we do not agree that it was sufficient to meet the statutory requirement of corroboration.
As this court has noted, the law views the testimony of an accomplice with a “suspicious eye” (People v Berger, 52 NY2d 214, 218; People v Duncan, 46 NY2d 74, 78-79, cert den 442 US 910; see, also, People v Dory, 59 NY2d 121, 128). Especially where circumstances suggest that the motivation behind an accomplice’s testimony may have been to curry favor with the prosecution and receive lenient treatment, accomplice testimony lacks the inherent trustworthiness of testimony of a disinterested witness (People v Daniels, 37 NY2d 624, 629; People v Kress, 284 NY 452, 459). Accordingly, accomplice testimony is regarded with “the utmost caution” (People v Berger, 52 NY2d 214, 219, supra). Particular scrutiny is appropriate here, where the accomplice testified under a promise of leniency and where the Trial Judge, who had the advantage of observing the witness, noted the inconsistency of *306 her testimony and her hostility toward her former boyfriend, and expressed his fear that an innocent man stood convicted.
CPL 60.22 (subd 1) prohibits a conviction “upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission” of the crime. The corroboration must consist of “evidence from an independent source of some material fact tending to show that defendant was implicated in the crime” (People v Kress, 284 NY 452, 460, supra). It need only “connect the defendant with the crime in such a way that the jury may be reasonably satisfied that the accomplice is telling the truth” (People v Daniels, 37 NY2d 624, 630, supra). Matters of seeming insignificance “may so harmonize with the accomplice’s narrative as to have a tendency to furnish the necessary connection between defendant and the crime” (People v Dixon, 231 NY 111, 117). But where the corroboration has no “real tendency to [provide such connection], it is insufficient” (People v Kress, 284 NY 452, 460, supra; People v Wasserman, 46 AD2d 915).
On this appeal, the People point to three evidentiary bases as satisfying the requirement for corroboration: defendant’s admitted visit to Alexander’s, his presence in the abandoned apartment three or more hours before the crime, and his false alibi.[2]
Defendant’s admission that he went to Alexander’s neither constitutes nor contributes to the requisite corroboration. First, the transcript of defendant’s videotaped statement does not support the People’s reading of it as an admission of his presence at Alexander’s on Thursday, December 21, when four of Watt’s travelers checks were cashed at Alexander’s. Though defendant initially in this statement expressed some confusion regarding dates, he stated unequivocally that he went to Alexander’s on Wednesday, December 20, the day before the crime: “Wednesday I made fourteen dollars and change. I told you I went to *307 Alexander’s and I bought decorations. That was Wednesday”. Later, defendant said, “Wednesday during the day I went out because I was washing cars * * * Then I went shopping at Alexander’s.” Second, even if defendant’s admitted visit to Alexander’s could be read to have occurred on Thursday, December 21, still this would have not been corroborative evidence. The testimony at trial does not permit the inference that defendant used the checks, Baker herself having testified that Alston used the checks; it does not establish that defendant and Alston were together at Alexander’s; and it does not even reveal whether the two men went to the same Alexander’s branch. Thus, defendant’s visit to Alexander’s established no nexus with the criminal activity (see People v Nieto, 97 AD2d 774), and must be disregarded as corroboration.
Nor is CPL 60.22 satisfied by Jennings’ testimony that she saw defendant at the scene of the crime three or more hours before its commission. Presence at the scene of a crime may provide the necessary corroboration where, for example, “there was no plausible hypothesis therefor other than that the defendant was a likely participant in the criminal transaction, or, even if there were an innocent explanation therefor, if the circumstances of the crime itself were otherwise such as to import corroborating significance” (People v Hudson, 51 NY2d 233, 240, n; People v Tillotson, 63 NY2d 731; see, also, People v Wasserman, 46 AD2d 915, supra). Thus, even independent evidence of a defendant’s presence at the scene of a crime at the time of its commission may not invariably corroborate an accomplice’s accusation (People v Lanza, 57 NY2d 807, revg on dissent 83 AD2d 714; People v Hudson, 51 NY2d 233, 240, supra). But where the independent evidence establishes defendant’s presence at the scene of a crime at a time other than when it was committed, it is all the more difficult to invest it with corroborative significance (cf. People v Kress, 284 NY 452, supra; People v Nieto, 97 AD2d 774, supra; People v Horton, 61 AD2d 1082). Here, defendant’s presence at the abandoned apartment at least three hours before the crime did not itself tend to connect him with the commission of the crime. There is no evidence that, at the time of defendant’s presence, the apartment was in any *308 way associated with the criminal enterprise. Moreover, by the prosecution’s own evidence, apartment 4S had previously been used by various people, including defendant, to drink and smoke marihuana, so that his presence there was hardly unusual.
The question then is whether defendant’s false alibi, by itself, corroborated Baker’s testimony. A false alibi falls into the category of evidence, including flight and analogous conduct, considered indicative of consciousness of guilt and thus of guilt itself. (See People v Reddy, 261 NY 479, 486.) Evidence thought to bear on consciousness of guilt has traditionally been considered weak because an innocent person may attempt to extricate himself from a situation by denying incriminating evidence even though he knows it can be truthfully explained or by fleeing from an accuser because of fear of wrongful conviction. Thus, a false alibi may be due not to consciousness of guilt of the crime charged but to consciousness of some incriminating evidence and the justifiable desire to remain free (see People v Benzinger, 36 NY2d 29, 33-34; People u Yazum, 13 NY2d 302; People v Leyra, 1 NY2d 199; People v Reddy, 261 NY 479, supra).
While such evidence may corroborate the testimony of an accomplice (People v Leyra, 1 NY2d 199, 208, supra), even in corroboration cases the court has found some nexus between the defendant and the criminal activity apart from the bare evidence of consciousness of guilt. In People v Deitsch (237 NY 300, supra), for example, the independent evidence established defendant’s presence at the scene of the crime moments before its commission. Defendant’s false denial of presence in those circumstances permitted the inference that his presence there, at that time, was not innocent. Thus, it was the combination of defendant’s presence at the scene and the false denial which the majority found sufficient (see, also, People v Glasper, 52 NY2d 970; People v Ruberto, 10 NY2d 428; People v McGuire, 135 NY 639). Here, by contrast, there was no evidence that defendant’s presence in apartment 4S hours before the crime was even contemplated was anything but innocent, and thus there is no basis for an inference from his denial that his presence there was a guilty presence.
*309 Where an accomplice’s testimony is bolstered only by evidence of consciousness of guilt, this court has been reluctant to find the necessary corroboration. In People v Reddy (261 NY 479, supra), two men committed a robbery/ murder and the question came down to whether the accomplice’s incriminating testimony was adequately corroborated by the defendant’s flight from parole authorities. The court determined that even if there were a connection between the defendant’s flight and the commission of the crime, it was “so inherently weak and inconclusive as to furnish no reasonable ground for a finding by the jury that the accomplice was telling the truth” (id., at p 488). We reach the same conclusion today. The bare evidence of consciousness of guilt, in the circumstances of this case, was so inherently weak that it did not satisfy the corroboration requirement of CPL 60.22. Accordingly, the order of the Appellate Division should be reversed and the order of the trial court dismissing the indictment as to defendant reinstated.

. Baker testified that, in exchange for her testimony, she had been promised that she could be sentenced to probation.

. The People do not rely on the testimony of Melvin Herman or James Greer, as did the concurring Justices in the court below. We agree that these witnesses provided no corroboration. Herman’s description of the men on the stoop was too vague to support an inference that defendant was one of them. Similarly, Greer’s testimony that he did not see defendant, though not contradicting Baker’s testimony that defendant was hiding, is in no sense corroborative of defendant’s presence.