OPINION OF THE COURT
Kaye, J.
Defendant’s appeal from a conviction of first degree manslaughter, involving the death of six-year-old Lisa Steinberg, centers on his contention that only a person with medical expertise can form the requisite intent to cause serious physical injury to a child by failing to obtain medical care. We conclude that this contention, as well as the several others defendant advances, lack merit, and that the Appellate Division order sustaining the conviction should be affirmed.
I.
In the evening of November 1, 1987, defendant and Hedda Nussbaum were at home in their one-bedroom Greenwich Village apartment, with their two "adopted” children, Lisa, then six years old, and Mitchell, 16 months old. Nussbaum was in the kitchen with Lisa while defendant dressed in the bedroom for his dinner appointment with a friend. Lisa went into the bedroom to ask defendant to take her with him. Moments later, defendant carried Lisa’s limp body out to Nussbaum, who was then in the bathroom, and they laid the child on the bathroom floor. Lisa was unconscious, having *679 experienced blunt head trauma of great force, and her breathing was raspy. According to Nussbaum, defendant later admitted that he had "knocked [Lisa] down and she didn’t want to get up again.”
While Nussbaum attempted to revive Lisa, defendant continued dressing. Defendant told Nussbaum to let her sleep, promised to awaken the child upon his return, and then left for dinner. Nussbaum did not seek medical care for Lisa because she believed defendant had supernatural healing powers, and felt that calling for assistance would be considered a sign of disloyalty.
Defendant returned about three hours later, at 10:00 p.m., retrieved a file relating to his oil well investments, and left again. When he came back a few minutes later, Nussbaum urged him to revive the still-unconscious child. Defendant declined — explaining that they "ha[d] to be relating when she wakes up” — and he instead freebased cocaine for the next several hours. Finally, at 4:00 a.m., after Nussbaum’s repeated urgings, defendant carried Lisa from the bathroom floor to the bedroom, where her breathing seemed to sound better. Defendant rested his arm on Lisa, and continued talking to Nussbaum.
At 6:00 a.m., when Nussbaum left the room, defendant called out that Lisa had stopped breathing. Defendant initially rejected Nussbaum’s offer to call 911, but finally acceded when his attempts to resuscitate the child failed. Police and paramedics arrived shortly after being summoned, administered oxygen, and rushed Lisa to the hospital.
At the hospital, defendant explained that Lisa had gone to bed complaining of a stomach ache, and had vomited during the night, but that he believed she was otherwise all right until he checked on her around 6:00 a.m. and discovered that her breathing was coarse. In fact, the doctors determined that Lisa, who was in a coma, was suffering from severe head injuries — a result of blunt trauma — and placed her on life support equipment. Lisa’s condition did not improve, and neurological tests performed on November 3 indicated that she was brain dead. Life support was discontinued on November 5.
Defendant was indicted for second degree (depraved indifference) murder, first degree manslaughter, and seven charges that were severed or dismissed. Defendant was acquitted of murder but convicted of manslaughter, and the Appellate *680 Division affirmed the conviction. We find no error and accordingly also affirm.
II.
First degree manslaughter requires proof that defendant, with intent to cause serious physical injury,* caused death (Penal Law § 125.20 [1]). The People’s theory, as charged to the jury, was that defendant performed both acts of commission (striking Lisa) and acts of omission (failure to obtain medical care), each with intent to cause serious physical injury, and that such acts caused Lisa’s death. Defendant contends that failure to obtain medical care for a child cannot, as a matter of law, support the mens rea element of first degree manslaughter — intent to cause serious physical injury —unless defendant has medical expertise, and would thereby know that serious injury will result from a lack of medical attention. That contention — which he characterizes as the core question on this appeal — is meritless.
The Penal Law provides that criminal liability may be based on an omission (see, Penal Law § 15.05), which is defined as the failure to perform a legally imposed duty (Penal Law § 15.00 [3]). Parents have a nondelegable affirmative duty to provide their children with adequate medical care (Matter of Hofbauer, 47 NY2d 648, 654-655; Family Ct Act § 1012 [f] [i] [A]). Thus, a parent’s failure to fulfill that duty can form the basis of a homicide charge (see, People v Flayhart, 72 NY2d 737; People v Henson, 33 NY2d 63).
Although Flayhart and Henson involved prosecutions for reckless manslaughter and criminally negligent homicide, the failure to obtain medical care can also support a first degree manslaughter charge, so long as there is sufficient proof of the requisite mens rea — intent to cause serious physical injury.
The revised Penal Law, in accord with the modern trend (see, 1 LaFave and Scott, Substantive Criminal Law § 3.5 [b], at 305 [1986]), distinguishes between "intent” and "knowledge” (see, Penal Law § 15.05 [1], [2]; People v Kaplan, 76 NY2d 140). A person acts intentionally when there is a "conscious objective” to cause the result proscribed by statute (Penal Law § 15.05 [1]; People v Gallagher, 69 NY2d 525, 529). *681 By contrast, a person acts knowingly when there is an awareness that a particular element of a crime is satisfied (see, Penal Law § 15.05 [2]; People v Kaplan, 76 NY2d, at 144, n 3, supra). Thus, if intent is the governing mens rea (as it is here), the focus is on the defendant’s conscious aim or purpose — the objective — in doing particular acts. Defendant’s knowledge or awareness that the result will occur — while a factor the jury may take into consideration to infer intent — is itself not a prerequisite of intent.
Contrary to defendant’s claim, even a person without specialized medical knowledge can have the intent to cause serious physical injury by withholding medical care. If the objective is to cause serious physical injury, the mental culpability element of first degree manslaughter is satisfied— whether or not defendant had knowledge that the omission would in fact cause serious injury or death.
Defendant argues that "everyone” knows that failure to supply food to a child will lead to death, and thus intentional homicide is a proper charge under those circumstances (see, e.g., Zessman v State, 94 Nev 28, 573 P2d 1174; Harrington v State, 547 SW2d 616 [Tex Grim App]), but that the need for medical care is often a matter of opinion, and a layperson could not be expected to know the gravity of the situation. The distinction defendant would have us draw, as a matter of law, between defendants who have a medical background and those who do not, is unsupportable.
Putting aside defendant’s attempt to import a knowledge requirement into a statute that has none, and putting aside that the mens rea for first degree manslaughter is intent to cause serious physical injury, not death — it is plain that defendant’s argument centers on factual, not legal, distinctions. Certainly there are situations where the need for prompt medical attention would be obvious to anyone — a child bleeding profusely, for example, or a six-year-old girl laying unconscious after a blunt head trauma. Thus, defendant’s argument that the failure to obtain medical care for a child may not, as a matter of law, support a homicide charge that requires intent must be rejected.
III.
Having found no defect in the prosecution’s legal theory, we next consider whether the evidence is legally sufficient to sustain the conviction. In undertaking this review, the evi *682 dence must be viewed in a light most favorable to the People (Pe ople v Contes, 60 NY2d 620, 621) to determine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt (People v Bleakley, 69 NY2d 490, 495). There is no need to replicate the Appellate Division’s extensive analysis of the record supporting its conclusion that the evidence was legally sufficient (170 AD2d 50, 65-70). It is adequate for our purposes to highlight the aspects of the case that demonstrate legal sufficiency.
There was no dispute at trial that Lisa’s death was a homicide. Even the defense expert agreed that the child’s death was caused by brain trauma as a result of abuse. The medical testimony, including Lisa’s treating physicians and the postmortem examination, confirmed beyond a reasonable doubt that Lisa’s death was a consequence of an assault and a failure to obtain prompt medical attention.
The evidence was also legally sufficient to support the jury’s determination that the assault was administered by defendant — and not Nussbaum, as the defense had argued. Nussbaum herself testified that she did not strike Lisa that night; that moments after Lisa went into the bedroom, defendant carried her unconscious body out; and that defendant admitted to knocking Lisa down. There was also evidence that defendant had physically abused Lisa several days before her death, and that defendant’s knuckles had fresh bruises on November 2. Moreover, there was evidence of Nussbaum’s debilitated physical condition on November 1 from which a jury could infer that she did not deliver the fatal injury. Thus, based on the evidence, a rational jury could have concluded, beyond a reasonable doubt, that it was defendant who caused the head trauma that led to Lisa’s death.
The evidence was also sufficient to support the jury’s determination that defendant struck Lisa and thereafter failed to summon medical assistance, each with the intent to cause serious physical injury. Intent may be inferred from conduct as well as the surrounding circumstances (see, People v Smith, 79 NY2d 309, 315; People v Bracey, 41 NY2d 296, 301). The expert testimony described the tremendous force necessary to inflict the head trauma that caused Lisa’s death. Moreover, after Lisa was rendered unconscious, defendant left for dinner, and when he returned three hours later, freebased cocaine while the child lay on the bathroom floor. Addition *683 ally, when defendant admitted to Nussbaum during the night that he knocked Lisa down, he explained that "the staring business had gotten to be too much for her.” This is relevant because there was evidence that defendant was convinced that the children were staring at him to induce hypnotic trances. Thus, the jury could have inferred from the evidence that defendant’s objective in assaulting Lisa and failing to summon medical assistance was to cause serious physical injury, perhaps in response to Lisa’s purported staring. That defendant acceded to Nussbaum’s request to telephone 911 when Lisa stopped breathing might demonstrate that defendant did not intend to cause the child’s death, but does not militate against the jury finding that he intended to cause serious injury.
In sum, the evidence was sufficient to establish the elements of first degree manslaughter.
Similarly, there is no merit in defendant’s claim that Nussbaum’s testimony was insufficiently corroborated. Although many States, and the Federal courts, permit a conviction to rest solely on the uncorroborated testimony of an accomplice (see, People v Moses, 63 NY2d 299, 310-311 [Jasen, J., dissenting]), our Legislature requires that accomplice testimony be corroborated by evidence "tending to connect the defendant with the commission” of the crime (CPL 60.22 [1]). The corroboration must be independent of, and may not draw its weight and probative value from, the accomplice’s testimony (People v Moses, 63 NY2d, at 306, supra; People v Hudson, 51 NY2d 233, 238). The corroborative evidence need only "tendQ to connect” the defendant to the crime; it need not establish all the elements of the offense (CPL 60.22 [1]; People v Hudson, 51 NY2d, at 238, supra; People v Cunningham, 48 NY2d 938, 940). Seemingly insignificant matters may harmonize with the accomplice’s narrative so as to provide the necessary corroboration (People v Bretti, 68 NY2d 929, 930; People v Moses, 63 NY2d, at 306, supra; People v Cunningham, 48 NY2d, at 940, supra). So long as the statutory minimum is met, it is for the jury to decide whether the corroboration satisfies them that the accomplice is telling the truth (see, People v Glasper, 52 NY2d 970, 971; People v Fiore, 12 NY2d 188, 201-202).
The Trial Judge enumerated specific items of independent, corroborative evidence for the jury’s consideration: (i) defendant’s presence at the apartment at 6:30 a.m. on November 2, as confirmed by police and paramedics; (ii) defendant’s own *684 statements that placed him in the apartment during the hours prior to the 911 call, and indicated that he and Nussbaum were the only adults in the apartment; (iii) the medical testimony indicated that the injuries to Lisa were inflicted by a man of defendant’s stature, and that Nussbaum was so debilitated that she was physically incapable of inflicting the injuries; (iv) hairs, forcibly removed from Lisa’s head, were found on defendant’s clothing; and (v) defendant had fresh bruises on his hand.
This evidence, if credited by the jury — as was their prerogative — was sufficient to meet the "tending to connect” standard of CPL 60.22 (1). Thus, we reject defendant’s assertions that there was insufficient corroboration as a matter of law.
IV.
The final issue that warrants discussion concerns defendant’s claim that the trial court erred in its response to a jury note. As one of its numerous requests during deliberations, the jury asked for the following "clarification”: "If there was no apparent intention to cause injury, but the acts resulted in serious physical injury nonetheless, would that be grounds to conclude intent as spelled out by law?” Defense counsel suggested that the court simply respond in the negative, but the trial court, to alleviate possible juror confusion, instead chose to give a more expansive supplemental charge.
The trial court is generally in the best position to evaluate the jury’s request, and therefore is vested with discretion in framing an appropriate response (People v Malloy, 55 NY2d 296, 302, cert denied 459 US 847). In all instances, the court must "respond meaningfully” to an inquiry (People v Almodovar, 62 NY2d 126, 131). A meaningful response may, depending on the circumstances, include simply rereading the initial charge (see, People v Malloy, 55 NY2d, at 302, supra). The adequacy of the trial court’s response is gauged by the form of the jury question, the particular issue of which inquiry is made, the supplemental instruction actually given, and the prejudice (if any) to the defendant (People v Almodovar, 62 NY2d, at 131-132, supra, quoting People v Malloy, 55 NY2d, at 302, supra).
Intent can be a difficult issue to grasp, and thus the trial court cannot be faulted for giving a broader response than defendant would have liked. In substance, the trial court explained that the People had the burden of proving, beyond a *685 reasonable doubt, that defendant had a conscious objective to cause serious physical injury; that intent is a mental operation that ordinarily must be inferred by an examination of all the facts and circumstances; and that the jury could infer that a person intended the natural and probable consequences of an act.
Nothing in the court’s supplemental charge was a misstatement of the law, nor did it suggest a positive response to the jury’s question. Indeed, as the Appellate Division noted, while a simple negative response would have informed the jury that it could not automatically infer intent to cause the injuries merely because the injuries occurred, such a response might have obscured the jury’s right to make a factual finding of intent based on the natural and probable consequences of defendant’s acts and the surrounding circumstances. For these reasons, the trial court’s supplemental charge was not erroneous.
Defendant’s remaining contentions, to the extent they are preserved for our review, are without merit.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Simons, Hancock, Jr., and Bellacosa concur; Judge Titone taking no part.
Order affirmed.

 "Serious physical injury” is "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ.” (Penal Law § 10.00 [10].)