OPINION OF THE COURT
 

 Bellacosa, J.
 

 Appellant Victor Breland was a key operative in a major crack cocaine network spread principally through Brooklyn. With the assistance of confederates, he committed a series of serious crimes during several months in 1988, for which he was jointly prosecuted. Breland was found guilty by a jury after a lengthy trial of enterprise corruption; murder in the second degree (six counts); attempted murder in the second degree of Willie Ashton; assault in the first degree; and criminal possession of a weapon in the second degree (four counts). The Appellate Division affirmed and a Judge of this Court granted him leave to appeal.
 

 An affirmance of the unanimous order of the Appellate Division upholding the judgment of conviction is warranted. We address, as the only issues meriting discussion and analysis, the corroborative evidence under CPL 60.22 and a notice and identification feature arising under CPL 710.30.
 

 L
 

 Shirley Bibbs, an employee beautician, and James Hamilton, Sr., the father of Breland’s rival drug lord, James Hamilton, Jr. (the target of reprisal who happened not to be present), were shot to death by Breland and an accomplice, Johnny Ray Robinson, shortly after noon on March 31, 1988 in the Glamorama Beauty Parlor. Accomplices of appellant
 
 *291
 
 Breland (not those jointly tried with him) gave confirmatory detailed accounts of the calculated assault designed to execute James Hamilton, Jr. A caravan of three cars containing the perpetrators assembled at Breland’s house. He supplied everyone with the guns and instructed several members concerning their role in firebombing the Glamorama premises as an aftermath to the attack. A new confederate, Willie Ashton, aged 17, who was stationed as an outside lookout and who was to toss the Molotov cocktail, testified at Breland’s trial. Breland argues that Ashton remained an accomplice at law (like all the other testifying accomplices) throughout the criminal adventure even though Breland, as he exited the Glamorama shop after the shootings inside, shot at a very close distance and seriously wounded Ashton and shot to death the other lookout, Mitchell Rich. No firebombing took place, as the two designated firebomb tossers were shot by Breland in his plan to eliminate witnesses against him, even if they happened to be confederates.
 

 One week later, on April 6, 1988, as another aftermath of the murders inside and outside the Glamorama shop, appellant Breland also personally executed a man named Joseph Lovell. His role in the over-all criminal enterprise was as a front for all the vehicles used in the crack cocaine business. They were registered in Lovell’s name, including vehicles used in the Glamorama attack. Breland duped Lovell into driving with him and another confederate to an isolated street in the gang’s principal territory in Brownsville. Once out of the car, Breland turned and shot Lovell in the face at a distance of 12 to 18 inches, killing him instantly. The accomplices’ accounts of this murder and of the Glamorama shootings is damning and varied with eyewitness, confessional and circumstantial aspects. As to the Lovell murder, the requisite tending-to-connect links for CPL 60.22 purposes are different from those presented to support the conviction on the Glamorama killings.
 

 Our careful scrutiny of the varieties of nonaccomplice evidence compiled in a lengthy record convinces us that the corroborative links to Breland are sufficient as to both related sets of killings. While the independent evidence might not alone be enough to convict Breland on either murder, it respectively supports the several accomplices’ testimony and other forms of evidence, and satisfies our established precedents and principles as to all the crimes for which Breland stands convicted.
 

 
 *292
 
 Hi
 

 We reject the notion that Ashton should be deemed Breland’s accomplice as a matter of law to Breland’s attempted murder of Ashton. That defies logic and reason, and is contrary to the plain language and purport of CPL 60.22. Also, it is not a conclusion compelled or supportable within the carefully confined rationales of
 
 People v Cona
 
 (49 NY2d 26) and
 
 People v Cobos
 
 (57 NY2d 798).
 

 Breland’s attempted murder of his erstwhile accomplice, Ashton, constitutes a subsequent independent criminal frame in a series of violent criminal scenes and acts. His own shooting of Ashton outside the beauty parlor severed, in the most profound legal and actual sense, Ashton’s initial accomplice relationship to him. Those exit shootings are legally discrete for accomplice corroboration purposes from the slayings inside the Glamorama parlor. Indeed, Breland’s disengagement from the murders inside the shop and his decision to eliminate even his own confederates as witnesses, fundamentally altered the legal relationship and operative evidentiary rubrics. That being so, Ashton’s testimony was freed of the customary accomplice corroboration inhibitions.
 

 The evidence that Ashton heaped upon a mountain of evidence from unquestionable accomplices readily satisfies the tending-to-connect, nonaccomplice evidence nexus that supports and validates the accomplices’ testimony implicating Breland in the murders of the two nontarget individuals inside Glamorama
 
 (see, People v Steinberg,
 
 79 NY2d 673;
 
 People v Moses,
 
 63 NY2d 299;
 
 People v Hudson,
 
 51 NY2d 233;
 
 People v Daniels,
 
 37 NY2d 624;
 
 People v Morhouse,
 
 21 NY2d 66;
 
 People v Dixon,
 
 231 NY 111). Especially notable, as the Appellate Division observed, is "Ashton’s testimony regarding his own attempted murder * * * [corroborating] the accomplice testimony of Gladden and Easterling that the defendant had only moments before used the same weapon
 
 inside
 
 the beauty parlor to kill Bibbs and Hamilton”
 
 (People v Breland,
 
 191 AD2d 500, 501 [emphasis in original]).
 

 We have recently summarized some of the governing standards as follows:
 

 "The corroborative evidence need * * * not establish all the elements of the offense (CPL 60.22 [1];
 
 People v Hudson,
 
 51 NY2d, at 238,
 
 supra; People v Cunningham,
 
 48 NY2d 938, 940). Seemingly insignificant matters may harmonize with the accom
 
 *293
 
 plice’s narrative so as to provide the necessary corroboration
 
 (People v Bretti,
 
 68 NY2d 929, 930;
 
 People v Moses,
 
 63 NY2d, at 306,
 
 supra; People v Cunningham,
 
 48 NY2d, at 940,
 
 supra).” (People v Steinberg,
 
 79 NY2d, at 683,
 
 supra; see also, People v Goldfeld,
 
 60 AD2d 1, 6.)
 

 We are also satisfied that enough nonaccomplice evidence tends to connect Breland to the Lovell murder. Lovell could potentially be traced to implicating Breland in a host of criminal activities by official motor vehicle records ties. As noted, New York’s accomplice corroboration protection, while persistently unique, requires only enough nonaccomplice evidence to assure that the accomplices have offered credible probative evidence
 
 (People v Steinberg,
 
 79 NY2d 673,
 
 supra).
 
 The corroborative glue does not require independent proof of the elements of the crime to sustain a conviction; it just has to bind the accomplice evidence to the defendant.
 

 In this case, the People supplied several strands of corroborative nonaccomplice evidence. Independent evidence from Emergency Medical Service and police and medical personnel as to the precise location of Lovell’s body at the place of execution and the location of the fatal gunshot wounds corresponded with the details of the accomplice who accompanied and aided Breland in the Lovell killing and who testified against him at trial. The vehicle registration course-of-dealing that connected Breland and his confederates to Lovell and to the Glamorama siege is also significant. It provides an objective, strong, verifying synapse to the over-all and particular criminal acts of the enterprise and of Breland. Woven into that is the testimony of a United Parcel Service driver making a nearby delivery at the time of the Glamorama shootings. He provided details to tie the getaway vehicle by license plate number to Lovell. The United Parcel Service fellow also identified a third lookout accomplice, Winston Easterling, who, in turn, at trial implicated Breland to a number of murders, including those at issue on this appeal. Indeed, he testified that Breland confessed the Lovell murder to him while they were both confined at Rikers Island.
 

 Additionally, the Ashton and Rich "lookout” shootings reflect Breland’s common plan or scheme, unleashed to eliminate weak links and witnesses to his indiscriminate killings inside Glamorama. We need not, however, adopt a view that simple or mere motive evidence alone can suffice as corrobora
 
 *294
 
 tive evidence in accomplice situations
 
 (see, People v Ohlstein,
 
 54 AD2d 109,
 
 affd
 
 44 NY2d 896), because there is enough additional material here which, when taken together, fulfills a standard application of our governing principles. We said in
 
 People v Morhouse:
 

 "As we indicated in
 
 People
 
 v.
 
 Fiore
 
 (12 N Y 2d 188, 201), the corroboration requirement of section 399 of the Code of Criminal Procedure is fully met when there is some nonaccomplice evidence 'fairly tending to connect the defendant with the commission of the crime’ (quoting from
 
 People
 
 v.
 
 Elliott,
 
 106 N. Y. 288, 292). The corroboration need not, as must circumstantial evidence, lead exclusively to the inference of the defendant’s guilt. As this court has noted, even
 
 Matters in themselves of seeming indifference
 
 * * *
 
 may so harmonize with the accomplice’s narrative as to have a tendency to furnish the necessary connection between the defendant and the crime.’ (People
 
 v.
 
 Dixon,
 
 231 N. Y. 111, 116-117; see, also,
 
 People
 
 v.
 
 Crum,
 
 272 N. Y. 348, 353-354;
 
 People
 
 v.
 
 Malizia,
 
 4 N Y 2d 22, 27;
 
 People
 
 v.
 
 Reddy,
 
 261 N. Y. 479, 484.)”
 
 (People v Morhouse,
 
 21 NY2d 66, 74,
 
 supra
 
 [emphasis added];
 
 see also, People v Henderson,
 
 298 NY 462, 467.)
 

 While the corroborative evidentiary details are not directly probative of the ultimate facts in connection with material facets of the elements of the crimes to be proved, they are standard confirmatory ties. It must be emphasized that proof of the elements of the crimes is not the determinative template of analysis here, and much less evidence and of a distinctly inferior quality is sufficient to meet the slim corroborative linkage to otherwise independently probative evidence from accomplices. In this case, the corroborative strands support overwhelming proof from the accomplices as to each element of all the counts beyond a reasonable doubt
 
 (compare, People v Booden,
 
 69 NY2d 185, 187).
 

 In sum, this record contains specific, separate and significant indicia of reliability with respect to the overwhelming evidence of guilt from the accomplices’ testimony, braced by unusually interlaced facets of a common motive. The whole of the record evidence thus authenticates the veracity of the vivid descriptions of Breland’s complicity in all the interre
 
 *295
 
 lated murders, including the assassination of Lovell, from many accomplices.
 

 ¡IL
 

 We also reject appellant’s additional argument of procedural irregularity arising out of claimed suggestibility by the police of the identification of Breland by Ashton. The argument finds no support in this record or in the governing authorities. Neither CPL 710.30 nor our precedents compels the relief Breland demands in this respect, because while Ashton’s viewings of Breland’s face and features, as described in the
 
 Rodriguez
 
 hearing
 
 (People v Rodriguez,
 
 79 NY2d 445), may have been relatively brief, they could not have been more intense or focused. Ashton especially noticed Breland’s large arms, his face and his stature. The viewing constitutes the kind of special prior relationship that provides assurance it was not, in these circumstances, the product of police suggestion
 
 (see, People v Tas,
 
 51 NY2d 915;
 
 People v Gissendanner,
 
 48 NY2d 543). Ashton was meeting a self-described lead assassin and Ashton was joining him in a violent criminal expedition. By common experience and understanding, the circumstances of their meetings would etch Breland’s features unforgettably in Ashton’s senses and memory cells. Moreover, some significance may surely be given to Ashton’s also coming face to face with Breland again, only a few feet apart, at the moment of his own possible death at Breland’s hand as Breland departed the Glamorama premises. The escalation of violence by Breland killing Rich in front of Ashton and wounding Ashton in an effort to eliminate witnesses against him provides a dramatic finale to any cognizable claim or concern about police suggestibility of Ashton’s identification. He needed no one to remember Breland.
 

 We have examined appellant’s many other assertions on appeal and conclude that they are without merit and do not warrant further discussion.
 

 Accordingly, the order of the Appellate Division afiirming the judgment of conviction against persistent violent offender Breland should be affirmed.
 

 Chief Judge Kaye and Judges Simons, Smith, Levine and Ciparick concur; Judge Titone taking no part.
 

 Order affirmed.