Chief Judge Kaye
(dissenting). There is no law question in this case. The only issue before us — as was the only issue before the Appellate Division — is whether the facts required the Trial Judge to charge the lesser included offense of assault *137 in the third degree, a misdemeanor. The Appellate Division majority agreed with the Trial Judge’s conclusion that there was no reasonable view of the evidence to support an inference that this defendant was aware of a risk of physical injury but not of a grave risk of death when he admittedly injured his infant son. Two dissenters (one of whom granted leave to appeal to this Court) felt otherwise.
Judge Bellacosa and I conclude that, on this record, the trial court — which had an opportunity to view the witnesses and assess the evidence concerning defendant’s state of mind— correctly determined that defendant was not entitled to the misdemeanor charge.*
In People v Steinberg (79 NY2d 673) we rejected defendant’s contention that a person without a medical education would be unaware that failure to seek medical attention for a child one had severely beaten could lead to that child’s death. At this advanced stage of civilization, we should also be able to state with equal confidence that reasonable persons are aware that severe physical abuse of a four-month-old infant creates a grave risk that the infant will die.
Defendant was familiar with the proper care and treatment of young children, acknowledging to a treating physician that he had even had "trouble” stemming from interaction with children in the past. He asserted that he was not so "stupid” as to leave an infant on the edge of a bed because a baby might fall and be injured. He was therefore admittedly aware that he was required to adhere to norms in caring for young children.
Defendant described his hands as "naturally strong,” and was aware that he "may have hurt” the baby’s ribs and that he had "shook him back and forth pretty hard.” He had also seen the child’s head "snap back and forth.” When he put the infant on the sofa, he did so in a manner that allowed the baby’s head to strike a spring or hard surface, bruising his jaw. Violent shaking of a young infant and striking a baby’s head against a hard surface are gross deviations from the norm.
At the time of the incident, defendant was also aware that he had "lost [his] temper” — suggesting he was fully aware of *138 the impropriety of his conduct but consciously failed to hold himself in check.
Defendant was likewise aware, immediately after the event, that his conduct had severely injured the baby, who immediately became unresponsive and stopped breathing. Defendant also told the State Police a false exculpatory statement about how the infant had fallen off a bed and wedged his head between the bed and a floor safe, in an effort to account for the child’s head injuries, evincing a consciousness of guilt and an awareness of the gravity of the injury he had inflicted.
The medical evidence told a fuller story than defendant’s belated admissions, providing objective evidence of the brutal manner in which the infant had been handled prior to his arrival at the hospital, when he was in defendant’s exclusive care. The child suffered at least 15 seizures in the hours after arrival at the emergency room. A bruise appeared under the baby’s chin. Fresh bruises appeared on the right chest and a two-inch abrasion, with a break in the skin, appeared on the left side of the chest. CAT scans of the child’s brain showed that all of the brain tissue in the occipital region had been destroyed, and replaced by fluid. According to the People’s expert in pediatric trauma, only "very severe,” "very vigorous and violent shaking” could cause such damage. There was far more evidence here than the isolated conclusion of the majority that defendant "lost his temper” and "vigorously” shook his infant son.
According to the Practice Commentaries to article 120 of the Penal Law, illustrative of assault in the third degree is the " 'mischievous throwing of a hard object at great speed through the window of an occupied home’ ” (Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 120, at 447, citing Staff Notes of Commn on Eev of Penal Law, Proposed NY Penal Law, McKinney’s Spec Pamph, at 332 [1964]). Defendant’s wrongdoing in this case was hardly comparable.
Judges Simons, Titone, Smith and Levine concur with Judge Cipabick; Chief Judge Kaye dissents in a separate opinion in which Judge Bellacosa concurs.
Order reversed, etc.

 The jury was also instructed as to assault in the second degree. Defendant did not object to that charge, but the jury chose to convict of the higher count.