[933 NE2d 186], 906 NYS2d 788]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NATHAN J. REOME, Appellant.

Argued May 6, 2010; decided June 17, 2010

## POINTS OF COUNSEL

*Frank A. Hiscock Legal Aid Society,* Syracuse (*Philip Roths-child* of counsel), for appellant. I. The lower courts erred in finding accomplice corroboration as the evidence did not tend to connect appellant to the commission of the crime, was not independent, and was insufficient as a matter of law. (*People v Glasper,* 52 NY2d 970; *People v Cunningham,* 48 NY2d 938; *People v Daniels,* 37 NY2d 624; *People v Kress,* 284 NY 452; *People v Moses,* 63 NY2d 299; *People v Hudson,* 51 NY2d 233; *People v Cross,* 25 AD3d 1020; *People v Wasserman,* 46 AD2d 915; *People v Cona,* 49 NY2d 26; *People v Nitzberg,* 287 NY 183.) II. The lower court erred in denying appellant Nathan Reome severance. (*People v Snare,* 216 AD2d 674; *People v Mahboubian,* 74 NY2d 174; *People v Payne,* 35 NY2d 22; *Bruton v United States,* 391 US 123; *People v Cruz,* 66 NY2d 61.) III. The lower court's sundry errors deprived appellant of a fair trial. (*Pointer v Texas,* 380 US 400; *People v Hudy,* 73 NY2d 40; *Davis v Alaska,* 415 US 308; *Chambers v Mississippi,* 410 US 284; *Washington v Texas,* 388 US 14; *People v Gissendanner,* 48 NY2d 543; *Delaware v Fensterer,* 474 US 15; *People v Crimmins,* 36 NY2d 230; *Pavel v Hollins,* 261 F3d 210.)

*William J. Fitzpatrick, District Attorney,* Syracuse (*James P.*

Maxwell of counsel), for respondent. I. The jury was presented with legally sufficient evidence corroborating the testimony of the accomplice. (*People v Allen,* 9 NY3d 1013; *People v Contes,* 60 NY2d 620; *People v Besser,* 96 NY2d 136; *People v Steinberg,* 79 NY2d 673; *People v Glasper,* 52 NY2d 970; *People v Rumble,* 45 NY2d 879; *People v Hudson,* 51 NY2d 233; *People v Cunningham,* 48 NY2d 938; *People v Breland,* 83 NY2d 286; *People v Pierce,* 303 AD2d 966.) II. The trial court properly denied defendant's motion for a separate trial. (*People v Buccina,* 62 AD3d 1252; *People v Mahboubian,* 74 NY2d 174; *People v Allaway,* 172 AD2d 617, 78 NY2d 1009; *People v Suber,* 256 AD2d 1086, 93 NY2d 979; *People v Bornholdt,* 33 NY2d 75, *cert denied sub nom. Victory v New York,* 416 US 905; *People v Melendez,* 285 AD2d 819, 97 NY2d 731; *People v Cruz,* 66 NY2d 61, 481 US 186; *People v Berg,* 59 NY2d 294; *People v Davis,* 58 NY2d 1102.) III. The rulings of the trial court did not deprive defendant of a fair trial. (*Werner v Sun Oil Co.,* 65 NY2d 839; *People v Wernick,* 89 NY2d 111; *People v Taylor,* 75 NY2d 277; *People v Carroll,* 95 NY2d 375; *People v MacDonald,* 63 AD3d 1520; *People v Buccina,* 62 AD3d 1252; *Pavel v Hollins,* 261 F3d 210; *People v Guidice,* 83 NY2d 630; *People v Moore,* 46 NY2d 1.)

**OPINION OF THE COURT**

Smith, J.

Defendant was convicted of participating in a rape with three other men. One of his alleged accomplices, Andrew Hilborn, was the only witness to identify him. The issue is whether Hilborn's testimony was corroborated as CPL 60.22 (1) requires. We hold that it was.

I

The main witnesses at trial were Hilborn and the victim. Both described a rape by four men. The victim did not identify any of the four, but Hilborn said he participated in the crime with Scott MacDonald, Santino Buccina and defendant. MacDonald, Buccina and Hilborn were connected to the rape by DNA evidence, but defendant was not.

Hilborn and the victim gave detailed and very similar accounts. According to both, the victim was intoxicated and lost on the streets of Syracuse in the middle of the night when she got into a car with four men who agreed to help her. Hilborn testified that MacDonald was driving, Buccina was in the front passenger seat, and the victim sat in back with Hilborn on her

left and defendant on her right; the victim, without identifying the men, described the same seating arrangement.

According to both Hilborn and the victim, the following events then took place: The victim borrowed a cell phone from one of the men and tried unsuccessfully to call someone who might help her find her way. Later, she fell asleep. While she slept, the car drove out of town, and stopped in an isolated spot. The men took the victim out of the car, removed her pants and bound her with duct tape. After she woke up, they removed the duct tape, and the driver of the car (MacDonald in Hilborn's telling) threatened her with harm unless she submitted to sex.

Both witnesses' accounts continued: The victim got back in the car and was raped, in order, by the driver, the man who had sat on her right, the man from the front passenger seat and her left-hand neighbor (MacDonald, defendant, Buccina and Hilborn in Hilborn's testimony). One of the men then returned the victim's clothing and rings, and the car drove back to Syracuse, with everyone in the same seats as before. During the drive back, the victim's right-hand neighbor (defendant, according to Hilborn) took her driver's license and appeared to enter identifying information into his cell phone. Also during the drive back, the occupants of the car had a conversation about whether they had passed the Central Square rest stop. Finally, the rapists dropped their victim off in Syracuse, near a hotel.

In addition to the testimony of Hilborn and the victim, the People produced other testimony and documentary evidence. We will describe later in this opinion the parts of it we think most relevant.

The jury acquitted defendant of personally raping the victim, but convicted him on three counts of rape as an accomplice and one count of conspiracy. The Appellate Division affirmed, with two Justices dissenting (64 AD3d 1201 [2009]). An Appellate Division Justice granted permission to appeal to this Court (13 NY3d 751 [2009]), and we now affirm.

## II

CPL 60.22 (1) says: "A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense."

The "corroborative evidence" required by this statute need not be powerful in itself. "The corroborative evidence need not

show the commission of the crime; it need not show that defendant was connected with the commission of the crime. It is enough if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth" (*People v Dixon*, 231 NY 111, 116 [1921] [citations omitted]). "[T]he role of the additional evidence is only to connect the defendant with the commission of the crime, not to prove that he committed it. The accomplice testimony, if credited by the jury, may serve the latter purpose" (*People v Hudson*, 51 NY2d 233, 238 [1980]). Indeed, we have said that "much less evidence and of a distinctly inferior quality is sufficient to meet the slim corroborative linkage to otherwise independently probative evidence from accomplices" (*People v Breland*, 83 NY2d 286, 294 [1994]). Still, if the corroboration requirement is not met, a conviction cannot stand.

Here, as our summary above makes clear, the great bulk of Hilborn's testimony was corroborated by the victim. But the victim did not, as defendant emphasizes, corroborate one critical detail, defendant's identity—and therefore, defendant argues, her testimony was not evidence "tending to connect the defendant with the commission of [the] offense." Evidence showing that, in general, the accomplice told the truth is not enough, in defendant's view; he argues that there must be evidence independently pointing to him as the offender.

Defendant's argument finds support in *People v Hudson*, where we said: "To meet the statutory mandate the corroborative evidence must be truly independent; reliance may not to any extent be placed on testimony of the accomplice for to do so would be to rely on a bootstrap" (51 NY2d at 238). *Hudson* would require that we consider only evidence that is "independent" in the sense that it could be viewed as connecting defendant to the crime even if the accomplice testimony did not exist.

As we will explain, the rule stated in *Hudson* is not supported by our other cases, and we do not follow it here. Nevertheless, the distinction *Hudson* makes is a useful one: Evidence that is independent of the accomplice's testimony is generally entitled to more weight than evidence that is not. Thus we will perform the exercise that *Hudson* requires and consider what evidence would, if the accomplice's testimony did not exist, tend to connect defendant with this offense. We will then consider the importance of other evidence, not independent in the *Hudson* sense.

Disregarding Hilborn's testimony, the evidence in the record that might, arguably, tend to connect defendant with the crime may be summarized as follows:

- Defendant was a friend of one of the known rapists, Mac-Donald. MacDonald's father-in-law testified that defendant had, four or five times, visited MacDonald at his home.

- Shortly before and shortly after the rape, defendant was in frequent contact with another of the rapists, Buccina. Buccina's cell phone records showed that he called defendant or defendant called him a total of 31 times on the day before the rape, the day of the rape and the day after.

- Of those 31 calls, none occurred during the time when the victim's testimony placed the four rapists together. Dozens of calls appear on Buccina's cell phone records in the hours immediately preceding and following the rape, but none of those calls was from or to defendant.

- There is some evidence, though weak, of a physical resemblance between defendant and one of the rapists. Defendant had dirty blond hair, and none of the other three alleged offenders had that feature. A statement given by the victim shortly after the rape, and brought out before the jury, said that one of the rapists had dirty blond hair. In a later statement, the victim retracted her description, saying she had given it because she felt pressured by the police to come up with identifying details. On the other hand, the victim made a cryptic remark during her testimony which may suggest that the appearance of defendant and his codefendants, MacDonald and Buccina, was like that of her attackers: "I'm sitting in a room with three people that I can tell you they sat in the car."

- Defendant had a strong emotional reaction when first contacted by the police about this case. An officer went to defendant's home and said he wanted to talk about a rape investigation. According to the officer, defendant "became extremely pale, sweaty, shaky . . . had to lean up against a railing."

 In sum, independent evidence that may point toward defendant as one of the victim's rapists does exist—but it must be said that the evidence is unimposing. It obviously falls far short of what would be necessary to prove defendant's guilt. Whether it meets the much less demanding standard applied to corroborative evidence under CPL 60.22 (1) is a close question. We find it unnecessary to answer the question, because we conclude

that other corroborative evidence, though not independent in the *Hudson* sense, should not be disregarded.

The text of CPL 60.22 (1), requiring "corroborative evidence tending to connect the defendant with the commission of such offense," need not be read, as it was in *Hudson*, to require that all corroboration that depends to any degree on the accomplice's testimony be ignored. The words "without reference to the accomplice's testimony" are not in the statute. There can be corroborative evidence that, read with the accomplice's testimony, makes it more likely that the defendant committed the offense, and thus tends to connect him to it.

A number of our decisions, both before and after *Hudson*, are inconsistent with the *Hudson* rule. As early as 1921, we said, in language we have repeatedly echoed since then: "Matters in themselves of seeming indifference or light trifles of the time and place of persons meeting may so *harmonize* with the accomplice's narrative as to have a tendency to furnish the necessary connection between defendant and the crime" (*Dixon*, 231 NY at 116-117 [emphasis added]; *see also, e.g., People v Daniels*, 37 NY2d 624, 629 [1975]; *Breland*, 83 NY2d at 294; *People v Besser*, 96 NY2d 136, 143 [2001]). To consider whether accomplice testimony and other evidence "harmonize" is not to disregard the accomplice's testimony; it is closer to the opposite. And we have held that some evidence may be considered corroborative even though it simply supports the accomplice testimony, and does not independently incriminate the defendant. Thus, in *Breland*, we relied on forensic evidence as to the location of a body and the gunshot wounds found in it that "corresponded with the details" supplied by an accomplice (83 NY2d at 293; *see also People v Bretti*, 68 NY2d 929 [1986]).

In short, many of our cases are inconsistent in their language, and some in their holdings, with the *Hudson* rule that CPL 60.22 (1) does not permit consideration of corroborative evidence that depends "to any extent" on accomplice testimony. We now make clear that this aspect of *Hudson* is overruled. Courts may consider harmonizing evidence as well as independent evidence, while giving due weight to the difference between the two. Some evidence that is not independent will obviously be worthless: If an accomplice testifies that the defendant committed a crime next to a tree in Central Park, the prosecution cannot "corroborate" this testimony by proving the existence of the tree. But in other cases, as in this one, harmonizing evidence may provide a substantial basis for crediting accomplice testimony.

■ Indeed, when we examine evidence that, though not independent of Hilborn's testimony, does harmonize with it, we find the corroboration to be ample. The victim's detailed account, and the DNA identifications of the three other rapists, give strong reason to believe that Hilborn's description of events was very largely true. It is possible, of course, that Hilborn told the truth about every other detail, and lied about defendant's involvement; but, on this record, it was for the jury to decide what weight to give that possibility. The cell phone records, too, harmonize with Hilborn's testimony in a not insignificant way: Hilborn testified that he was with defendant, Buccina and MacDonald for an extended period of time before they met the victim—and Buccina's cell phone records show that Buccina and defendant, who otherwise called each other often, placed no calls to each other for hours before the victim entered the car. If Hilborn was lying when he said that defendant was one of the men in the car, he was lucky that the cell phone records matched his testimony.

We conclude that the People produced corroborative evidence sufficient to connect defendant to the commission of the offense. Defendant's argument that he was improperly denied access to Hilborn's medical records is unpreserved, and his remaining arguments lack merit.

Accordingly, the order of the Appellate Division should be affirmed.

JONES, J. (dissenting). Defendant raises the question whether his conviction was obtained in violation of CPL 60.22 (1). Because the evidence presented to corroborate the accomplice's testimony did not meet the strictures of CPL 60.22 (1), I respectfully dissent.

The rule that requires the corroboration of an accomplice's testimony is a safeguard that recognizes the questionable reliability of the testimony of an accomplice. It requires independent support of the testimony of a person who admits that he participated in a crime along with his confederates, yet points the finger at another for his own personal benefit.[1] Accordingly, CPL 60.22 (1) requires "corroborative evidence tending to connect the defendant with the commission of such offense." I agree with the two dissenting Justices of the Appellate Division

---

1. The accomplice, Hilborn, received a sentence of seven years for his testimony, while the codefendants were sentenced to 25 years.

(64 AD3d 1201, 1204 [2009]) that the corroborating evidence offered by the People in this case fails to identify defendant as a perpetrator.

The majority cites a laundry list of purportedly corroborative evidence. In my view, the evidence offered up, which fails to link defendant to the crime, does not satisfy CPL 60.22 (1) or the relevant case law.

First, the People argue that because the accomplice was "correct" in three out of four of his identifications (of himself and two codefendants), which were confirmed by DNA evidence, he was "correct" when he identified defendant as a participant in the crime, even though no DNA evidence linking him to the crime was recovered from defendant. In short, the People seek to explain the *lack* of corroborating DNA evidence from defendant by relying on the accomplice who states he supplied defendant with a condom, and initially lied about certain details of his involvement.[2] Thus, in an interesting twist of logic, the People used the *lack* of corroborating DNA evidence from defendant, which would normally exculpate a defendant in a sex crime, to inculpate defendant here.

Further, the People argue there was a close friendship between defendant and codefendant Buccina, and evidence of telephone calls between them before and after the crime. Without any proof of the substance of these calls, no reasonable conclusion can be drawn concerning their corroborative value. These calls do not tend to identify defendant as a perpetrator of the offense. Further, an association between a defendant and the codefendants is not necessarily sufficient to establish that defendant was involved in criminal activity and cannot serve as corroborating evidence (*see People v Marmulstein*, 109 AD2d 948, 949 [3d Dept 1985]).

In addition, the People point to defendant's nervousness when he was arrested and when he was taken for DNA testing as corroborating evidence. This Court has held that consciousness of guilt evidence (e.g., an individual's nervousness when confronted by the police) is considered very weak evidence and does not necessarily meet the corroboration requirement of CPL 60.22 (1) (*see People v Moses*, 63 NY2d 299, 309 [1984]; *People v Reddy*, 261 NY 479, 487-488 [1933]).

---

2. The accomplice first stated that he used a condom. After the DNA evidence was discovered, he changed his story and said that he used a condom during part of the assault and then took it off.

Finally, the majority considers how the victim's testimony indicating the number of perpetrators and the method of attack "harmonizes" with the accomplice's details. Although the victim's testimony bolsters the accomplice's story, none of her details connect defendant with the crime. She was unable to identify any of the perpetrators after spending hours in the car with them. In any event, the fact that the victim's testimony harmonizes with the accomplice's does not connect the defendant with the crime, and is not corroborating evidence as contemplated by CPL 60.22 (1).

Contrary to the majority's position, I believe that the principles set forth in *People v Hudson* (51 NY2d 233 [1980]) and its progeny are controlling here. It is well settled that "[t]he corroboration must be independent of, and may not draw its weight and probative value from, the accomplice's testimony" (*People v Steinberg*, 79 NY2d 673, 683 [1992], citing *People v Moses*, 63 NY2d at 306; *People v Hudson*, 51 NY2d at 238).

The main cases the majority relies on, *People v Besser* (96 NY2d 136 [2001]) and *People v Breland* (83 NY2d 286 [1994]), are inapposite. In *Besser*, the indictment charged 10 defendants with one count of enterprise corruption based on 62 pattern criminal acts. Unlike here, in *Besser*, there was ample proof beyond the accomplices' testimony, including testimony from at least two nonaccomplice witnesses and documentary evidence, which sufficiently corroborated the accomplices' testimony.

In *Breland*, the defendant was charged with multiple murders and identified by many accomplices as well as independent witnesses. The majority cites an often quoted rule from *Breland*, i.e., "much less evidence and of a distinctly inferior quality is sufficient to meet the slim corroborative linkage to otherwise independently probative evidence from accomplices" (*Breland*, 83 NY2d at 294). However, this quote is incomplete as stated. The Court in *Breland* goes on to add the following: "In this case, the corroborative strands support overwhelming proof from the accomplices as to each element of all the counts beyond a reasonable doubt" (*id.* at 294 [citation omitted]).

There is no question that this was a particularly heinous crime. However, in such a case it is imperative to require the People to put forth the proper corroborating evidence. In *People v Cona* (49 NY2d 26, 37 [1979]), the Court stated, "[t]his is not a crippling requirement and serves to assure the reliability of evidence furnished by a witness who must be perceived as pos-

sibly laboring under considerable inducements to favor the prosecution." In the instant case, the accomplice not only wanted to curry favor with the prosecution for obvious reasons but may have been easily influenced by the police as well. This accomplice was in a psychiatric unit, schizophrenic, bipolar and hearing voices at the time of trial.

*People v Hudson* has been settled law for 30 years and has been cited with approval in more than 100 cases. It sets forth the rationale for CPL 60.22 (1) as follows:

> "[T]he purpose of the statute is to protect the defendant against the risk of a motivated fabrication, to insist on proof other than that alone which originates from a possibly unreliable or self-interested accomplice (*People v Daniels*, 37 NY2d 624). It is for this reason that the so-called corroborative evidence must stand on its own. To permit the testimony of the accomplice himself to import meaning or significance into the independent proof would furnish no assurance that the independent proof was not itself subject to the very untrustworthiness against which the statute seeks to protect" (*Hudson*, 51 NY2d at 238-239).

I disagree with the majority's decision to overrule any portion of *Hudson*. Generally, cases are overruled when they no longer serve the underlying " ' "nature and object of the law itself" ' , reason and the power to advance justice" (*People v Bing*, 76 NY2d 331, 338 [1990], quoting von Moschzisker, *Stare Decisis in Courts of Last Resort*, 37 Harv L Rev 409, 414). No such purpose exists here. No party has argued that *Hudson*, or any aspect of it, should be overruled. Furthermore, neither *Besser* nor *Breland*, which as stated were relied upon by the majority, have anything to do with the major thrust of *Hudson*.

In conclusion, the case against defendant was not supported by independent corroborating evidence tending to connect him to the crime as required by CPL 60.22 (1). Accordingly, he was denied a fair trial. It is troubling to consider that a person could be convicted of such a crime with absolutely no scientific or physical evidence to connect him to the crime, no identification by the victim, and the weakest of purported corroborating evidence.

Accordingly, I dissent and would reverse the order of the Appellate Division.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ and PIGOTT concur with Judge SMITH; Judge JONES dissents and votes to reverse in a separate opinion.

Order affirmed.