(August 24, 2006)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RANDY PICARD, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAMON WILLIAMS, Appellant. [819 NYS2d 760]—

Judgments, Supreme Court, New York County (Bonnie Wittner, J., at hearing; Edward J. McLaughlin, J., at jury trial and sentence), rendered January 7, 2002, convicting each defendant of murder in the first degree (two counts) and attempted murder in the first degree (two counts), and sentencing each of them to two terms of life imprisonment and two terms of 25 years to life, all sentences to run consecutively, unanimously reversed, on the law, the judgment vacated, and the matter remanded for a new trial as against defendant Williams and the indictment dismissed as against defendant Picard. Judgment, same court (Bonnie Wittner, J.), rendered June 4, 2002, convicting defendant Picard, upon his guilty plea, of attempted criminal possession of a weapon in the third degree, and sentencing him, as a second violent felony offender, to a definite term of four years, to be served concurrently with the murder and attempted murder sentences, unanimously reversed, on the law, the judgment vacated and the matter remanded to Supreme Court for further proceedings.

Defendants were convicted of the fatal shooting of two men and the wounding of two others. The People's theory was that defendants had been involved in prior altercations with the victims, friends of one Avan Logan. After defendant Williams learned, by telephone, that the victims had been bragging about a beating Logan had given his half brother, Ramon Cross, the day before, Williams asked Duane Thomas to drive him and defendant Picard to 26th Street in Manhattan. Thomas testified that he was present in the apartment occupied by Cross when Williams received the phone call and that Picard, Williams and Cross went into the bedroom, from which Thomas heard the slide of a gun being pulled back. Before Thomas drove defendants and Joseph Zuniga (who was not charged) to Manhattan, a "Chinese guy," subsequently identified as Pey Lee, approached the car and gave Williams a gun. They drove to 26th Street, where the three passengers got out. Williams was wearing a yellow baseball cap. Thomas next saw Williams and Picard some 20 minutes later as they ran up the street, entered the vehicle and yelled at him to drive off. A short while later, Williams received a call from Zuniga, who said that he was on his way to the subway. The next day, Williams told Thomas to take his car off the street and clean it up, which he did. In exchange for his testimony, Thomas stated that he was allowed to plead guilty to hindering prosecution and tampering with evidence, in exchange for a sentence ranging from as low as time served to $2^{1/3}$ to 7 years.

When Lee could not be located for trial, details of his interview with police were elicited by the prosecutor from a detective. Defendant Williams objected to the introduction of this evidence as a violation of his right to confront a witness against him under the Sixth Amendment, and defendant Picard objected on the ground that Lee's statement was not against his penal interest. Lee had told the detective that he brought a gun to Williams after receiving his telephone call and that Picard was present in the car with Williams. Lee stated that Williams, who was very upset by the previous night's fight involving his brother, indicated that he was "going to scare . . . those niggers in Manhattan."

The People concede that the introduction of Lee's statement violated the right of the accused to confront the witnesses against them (US Const 6th, 14th Amends; NY Const, art I, § 6; *Crawford v Washington*, 541 US 36 [2004]), but argue that defendant Picard did not preserve the issue for review and that, in any event, the error was harmless (*People v Douglas*, 4 NY3d 777, 779 [2005]). We disagree.

The evidence against defendants was not particularly strong, and the People's case was heavily dependent on the largely uncorroborated accomplice testimony given by Thomas. His evidence was entirely consistent with Lee's statement, the prosecutor informed the jurors on summation that the statement was "strong evidence" against defendants, and the jury requested that the court read back the pertinent testimony during deliberations, factors clearly warranting the conclusion that the admission of Lee's statement was not harmless beyond a reasonable doubt (*People v Hardy*, 4 NY3d 192, 198-199 [2005]; *People v Woods*, 9 AD3d 293, 295 [2004]).

Since defendant Picard did not join in the constitutional objection, his Confrontation Clause argument is unpreserved (*see People v Peralta*, 261 AD2d 101, 102 [1999], *lv denied* 93 NY2d 1024 [1999]; *People v Sennon*, 170 AD2d 546, 547 [1991], *lv denied* 78 NY2d 926 [1991]), and we decline to reach the issue in the interest of justice. However, Picard did preserve an objection to the admission of Lee's statement on the ground that it was improperly received as an admission against penal interest (*see People v Maerling*, 46 NY2d 289, 297 [1978] [sanctions attendant upon conviction "make admissions of guilt among the most disserving (*sic*) of declarations"]), and both defendants asserted that there was insufficient corroboration of accomplice testimony to sustain conviction. Irrespective of whether Lee's statement was properly admitted as a declaration against penal interest (*People v Settles*, 46 NY2d 154, 167-169 [1978]), it

requires corroboration because the People concede that Lee was an accomplice (*People v Steinberg*, 79 NY2d 673, 683 [1992]; *People v Moses*, 63 NY2d 299, 305-306 [1984]). Because "the corroborative evidence must be truly independent" (*People v Hudson*, 51 NY2d 233, 238 [1980]), it is required to consist of "proof other than that alone which originates from a possibly unreliable or self-interested accomplice" (*id.*).

The accomplice testimony concerning defendant Williams given by Thomas was sufficiently corroborated by several other witnesses who testified that one of the persons seen fleeing the scene of the shooting had a yellow hat or bandana on his head. Yet another witness stated that he saw two men, one of whom was wearing "something yellow" on his head, return to a red hatchback, which then drove off. Furthermore, billing records confirm that a call was made to Williams from a subway station a few blocks from the scene of the shooting at about the time Zuniga had called, as related by Thomas. Thus, we conclude that while the evidence against Williams tends to connect him with the commission of the crime (*see Hudson*, 51 NY2d at 238), the error in admitting Lee's statement requires a new trial.

By contrast, there is no nonaccomplice testimony to connect Picard with the crime. The People contend that Picard's participation in a confrontation that occurred a year earlier, in which a gun used in the present crime was fired at the occupant of a car, and a telephone call placed from Ramon Cross's cell phone to Picard at 12:40 P.M. on the day of the shooting constitute evidence "tending to connect the defendant with the commission of [the] offense" (CPL 60.22 [1]). This argument is without merit. That someone using Ramon Cross's cell phone called Picard more than six hours before the shooting is not a " 'material fact tending to show that defendant was implicated in the crime' " (*People v Moses*, 63 NY2d at 306, quoting *People v Kress*, 284 NY 452, 460 [1940]). A witness involved in the previous shooting saw only Ramon Cross, not Picard, firing at him. Ballistics evidence taken from shell casings recovered at the scene of both incidents establishes only that a gun from the prior shooting was also involved in the instant crime, not that Picard actually possessed the weapon at any time. Therefore, Picard is entitled to dismissal of the indictments against him.

Finally, Picard's guilty plea to attempted criminal possession of a weapon in the third degree in connection with the prior incident was based upon his knowledge that he was in a vehicle in which there was a loaded, operable weapon. Because his plea agreement was induced by the promise that his sentence would be served concurrently with those imposed for murder and at-

tempted murder and it is impossible to honor the promise of concurrent sentencing, the plea must be vacated (*People v Pichardo*, 1 NY3d 126, 129-130 [2003]).

In view of this disposition, we need not reach defendants' other contentions. Concur—Buckley, P.J., Tom, Andrias, Sullivan and Malone, JJ.