THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES McRAE, Appellant. [886 NYS2d 220]—

Appeal by the defendant from a judgment of the County Court, Orange County (Berry, J.), rendered September 12, 2006, convicting him of robbery in the first degree (two counts), robbery in the second degree, criminal possession of a weapon in the fourth degree, and menacing in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is modified, on the law, by vacating the defendant's conviction of robbery in the first degree under count one of the indictment and vacating the sentence imposed thereon; as so modified, the judgment is affirmed, and the matter is remitted to the County Court, Orange County, for a new trial on the charge of robbery in the first degree under count one of the indictment.

With respect to count one of the indictment, which charged robbery in the first degree in violation of Penal Law § 160.15 (4), the trial court erred in refusing to charge the affirmative defense under that statute. Although the complainant testified that he heard a "click" and felt a cold, hard object against his neck, which he believed to be a gun, he did not testify that he saw a gun. Moreover, the defendant's accomplices testified that a knife had been used in the robbery. Based upon this evidence, the jury could have found, by a preponderance of the evidence, that the object the complainant felt in the back of his neck was not a loaded firearm and thus, that the elements of the affirmative defense were satisfied (see People v Gilliard, 72 NY2d 877, 878 [1988]; People v Lockwood, 52 NY2d 790, 792 [1980]; People v Deboue, 234 AD2d 558, 559 [1996]).

The defendant's contention that the accomplice testimony adduced at trial was insufficiently corroborated by independent evidence is without merit (see CPL 60.22 [1]; People v Breland, 83 NY2d 286 [1994]; People v Goodson, 35 AD3d 760, 761 [2006]; People v Lawrence, 17 AD3d 697, 698 [2005]). The Criminal Procedure Law requires only that the corroborative evidence "tend[s] to connect" the defendant with the commission of the relevant offense (CPL 60.22 [1]). Under that standard, "[a]ll that is necessary is to connect the defendant with the crime in

such a way that the jury may be reasonably satisfied that the accomplice is telling the truth" (*People v Daniels,* 37 NY2d 624, 630 [1975]). That standard was met in this case. Viewing the evidence in the light most favorable to the prosecution (*see People v Contes,* 60 NY2d 620 [1983]), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon our independent review pursuant to CPL 470.15 (5), we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero,* 7 NY3d 633 [2006]).

The defendant's contention that the trial court failed to sufficiently inquire into his request for substitution of counsel is also without merit (*see People v Linares,* 2 NY3d 507, 510 [2004]; *People v Medina,* 44 NY2d 199, 207 [1978]; *People v Banister,* 15 AD3d 497 [2005]).

The sentence imposed upon the defendant's conviction of count two of the indictment was not excessive (*see People v Suitte,* 90 AD2d 80 [1982]). Prudenti, P.J., Miller, and Balkin, JJ., concur.

Eng, J., dissents and votes to reverse the judgment of conviction and dismiss the indictment, with the following memorandum in which Belen, J., concurs: The defendant was convicted of robbery in the first degree, and other offenses, for his role in the forcible theft of the complainant's wallet. During the course of the commission of the crime, the complainant never saw the faces of the two men who approached him from the rear and robbed him, or the knife which the defendant allegedly pressed against the back of his neck. Indeed, it was the complainant's testimony that he believed that a gun was the weapon used. Due to the inability of the complainant to identify the men who robbed him, the defendant's conviction rested almost entirely upon the testimony of two female accomplices who were involved in the robbery scheme. For the reasons which follow, I disagree with my colleagues' conclusion that the prosecution presented sufficient corroborative evidence to establish the defendant's guilt beyond a reasonable doubt. Accordingly, I respectfully dissent, and vote to reverse the judgment of conviction and dismiss the indictment.

The evidence presented by the prosecution reveals that on the afternoon of December 17, 2005, the complainant went to the Venture Inn, a small bar located in Port Jervis, New York. At the Venture Inn, the complainant met two young women, Verna Russman and Brandi McMillan. Russman was involved in a relationship with the defendant, James McRae, and McMillan was involved in a relationship with Samuel Spradley. Although the

defendant and Spradley were close friends, the two women had known each other for only about two weeks. Russman and Mc-Millan had gone to the Venture Inn together on December 17th, and were at the bar for several hours. The defendant and Spradley also were at the Venture Inn at various times that day, but neither was continually present.

During the course of the afternoon, the complainant engaged in conversation with Russman and McMillan, and purchased drinks for them. According to Russman, when the complainant first offered to buy her a drink, she refused, telling him that she "saw he had only $2.00." However, the complainant allegedly responded by asking Russman "how high can you count?"; and by showing her his wallet, which was full of $100 bills. McMillan also saw the complainant show Russman the cash in his wallet. At some point after seeing the money in the complainant's wallet, McMillan had a conversation with Spradley, who then left the bar. Shortly thereafter, Russman, who had agreed to accompany the complainant to a motel, asked McMillan if she wanted to go with them. However, McMillan stated that she was going to go with the defendant and Spradley. Inside the defendant's car, a dark blue Mercury Grand Marquis, McMillan, the defendant, and Spradley discussed a plan to follow the complainant and Russman, and rob the complainant.

The complainant then drove Russman to the Comfort Inn, where they rented a room. When the defendant, Spradley, and McMillan arrived at the Comfort Inn, McMillan went inside to find out the number of the room the complainant and Russman had rented. Inside the motel, McMillan located Russman and the complainant standing near the bar. Russman gave McMillan the couple's room number, but indicated that they were going to go to another bar because the motel bar was closed. McMillan then returned to the defendant's car, and Russman went outside to the parking lot to talk to the defendant and Spradley. Russman returned to the motel, but shortly thereafter, she accompanied the complainant to his truck, and drove with him to the Backtrack Inn. On the way to the Backtrack Inn, the complainant noticed that another vehicle was following his truck, and asked Russman if she knew who was following them. Russman replied, "don't worry about it." When the defendant, Spradley, and McMillan arrived at the Backtrack Inn, they waited in the parking lot while the complainant and Russman went inside and had drinks.

The planned robbery took place after Russman and the complainant had left the Backtrack Inn, and were about to enter the complainant's truck. Russman, who testified in exchange

for a more favorable plea agreement, claimed that she had no prior knowledge of the plan to rob the complainant, and suggested that McMillan was the individual who told the defendant and Spradley that the complainant was carrying a large amount of money. McMillan, however, asserted that Russman spoke to her about the robbery before she accompanied the complainant to the Backtrack Inn.

Describing the robbery, Russman testified that the defendant and Spradley "got a hold of" the complainant, and that the defendant put the blunt part of an open knife to the complainant's neck. Russman told the complainant to give the two men his money, so that he wouldn't get hurt. She also told the defendant that the money was in the complainant's back pocket. Russman then ran away, and got into the defendant's car, where McMillan was still seated. McMillan kept her head down during the robbery, so that she would not witness it.

After the robbery, the defendant and Spradley returned to the defendant's car, and Russman, who was in the driver's seat, drove away from the parking lot. As they drove away, the defendant and Spradley stated that they had gotten the complainant's wallet, and Spradley told McMillan that they had used a knife. The four then went to Pennsylvania, where they rented a motel room, and stayed overnight. McMillan registered for the motel room, using money given to her by the defendant. During the course of her testimony, Russman identified a knife belonging to the defendant as the knife used by him in the robbery, but explained that she assumed that it was the defendant's knife "since he was the one holding it." While steadfastly denying prior knowledge of the subject robbery, Russman admitted that she had played a role in setting up a victim in a prior unrelated robbery which had resulted in that victim's death.

The complainant had no opportunity to see the faces of the two men who grabbed him, and could describe them only as African American. He testified that the men placed a cold hard object to the back of his neck, and said "give it up or you're dead." The complainant believed that the object was a gun because he "heard something click." After Russman told the men that the money was in the complainant's wallet, the men reached into his back pocket, and took his wallet. The two men then drove away in a big car, which the complainant thought was black. He was only able to see the back of the car as it exited the parking lot.

A portion of the account of events leading up to the robbery was corroborated by photographs of the complainant and Russman checking in at the front desk of the Comfort Inn on the

evening of December 17, 2005. A Comfort Inn employee also confirmed that the complainant and Russman had registered for a room, and that the motel bar was closed when the couple checked in. In addition, the owner of a motel in Pennsylvania testified that McMillan registered for a room on the night of the robbery.

Three days after the robbery, McMillan voluntarily went to the Deer Park police station, accompanied by her father, to provide information regarding the robbery. Based upon the information McMillan provided, a New York State Police Investigator went to McMillan's apartment building, and arrested Spradley as he was leaving the premises. The defendant and Russman were then arrested inside McMillan's apartment. The investigator recovered a folding knife from the defendant's left hand pocket, which he secured in an evidence bag. According to the investigator, when this knife was opened, it made a "clicking noise."

At the close of the prosecution's case, the defendant moved to dismiss the charges against him, arguing that accomplice testimony of Russman and McMillan had not been sufficiently corroborated. The trial court denied the defendant's motion. The court subsequently instructed the jury that Russman and McMillan were accomplices as a matter of law and, thus, their testimony had to be corroborated by other evidence tending to connect the defendant to the commission of the subject offenses. The court additionally informed the jury that it was the People's contention that the requisite corroboration had been provided by evidence that (1) the defendant's car matched the description of the get-a-way car used, (2) the defendant was arrested at McMillan's address, and (3) a knife was recovered from the defendant's possession at the time of his arrest. Following deliberations, the jury convicted the defendant of robbery in the first degree (two counts), robbery in the second degree, criminal possession of a weapon in the fourth degree, and menacing in the second degree.

On appeal, the defendant continues to maintain that the prosecution failed to establish his guilt beyond a reasonable doubt because there was insufficient independent evidence to connect him to the robbery. I agree that the prosecution did not sustain its burden of proving the defendant's guilt beyond a reasonable doubt, and that we therefore are compelled to reverse the judgment of conviction.

In New York, no defendant may be convicted of any offense "upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the com-

mission of such offense" (CPL 60.22 [1]; *see People v Besser,* 96 NY2d 136, 143-144 [2001]). The purpose of the statutory corroboration requirement is "to protect the defendant against the risk of a motivated fabrication" by insisting upon "proof other than that alone which originates from a possibly unreliable or self-interested [source]" *(People v Hudson,* 51 NY2d 233, 238 [1980]). The law views accomplice testimony with a "suspicious eye," particularly "where circumstances suggest that the motivation behind an accomplice's testimony may have been to curry favor with the prosecution and receive lenient treatment" *(People v Moses,* 63 NY2d 299, 305 [1984]; *see People v Berger,* 52 NY2d 214, 218 [1981]; *People v Daniels,* 37 NY2d 624, 629 [1975]; *People v Gomez,* 39 AD3d 668, 669 [2007]). Thus, the statutory mandate is satisfied only by evidence which is truly independent of the testimony of the accomplice, and does not rely upon the accomplice testimony for its weight and probative value *(see People v Hudson,* 51 NY2d at 238). The "corroborative glue" does not require independent proof of all of elements of the crime to sustain a conviction, but must "bind the accomplice evidence to the defendant" *(People v Breland,* 83 NY2d 286, 293 [1994]).

Although the corroborative evidence requirement is not onerous, I do not believe that it was satisfied here, where little more than the accomplice testimony ties the defendant to the robbery. The complainant had no opportunity to see the faces of the two men who robbed him, and believed that the hard object that was held to the back of his neck was a gun because he heard a clicking noise. According to Russman, who secured reduced exposure to criminal liability in exchange for her testimony, the object which the defendant held to the complainant's throat was actually a knife, and she assumed that the knife recovered from the defendant upon his arrest was the knife he used during the robbery. Spradley also allegedly told McMillan, who did not witness the actual robbery, that a knife had been used. The fact that the defendant was in possession of a folding knife when he was arrested three days after the robbery does not, standing alone, provide independent evidence connecting him to the crime because the significance of his possession of this instrument relies upon the accomplices' testimony for its weight and probative value. The only evidence which can potentially be viewed as corroboration of the claim that a knife was used during the robbery is the police investigator's testimony that the knife made a clicking noise when opened, which was consistent with the complainant's testimony that he heard a clicking noise when the robbers held an object to his neck. Notably, however, the complainant was not asked to listen

to the clicking noise allegedly made by the knife in the courtroom, and asked whether the noise made by the knife was the same or similar to the noise he had heard during the robbery. Without such evidence, the investigator's testimony as to a clicking sound made by the folding knife recovered from the defendant only serves to invite pure speculation, and does not independently bridge an evidentiary gap connecting the knife, and inferentially, the defendant, to the crime. Moreover, while Russman testified that the knife was open when the dull part was held against the complainant's neck, she did not indicate whether the knife was opened prior to or during the course of the robbery. Under these circumstances, the defendant's possession of a knife which allegedly made a clicking noise when opened does not tend to connect him to the crime. Furthermore, in my view, the complainant's description of the vehicle in which his assailants fled as a big, black car is simply too vague and generic to link the defendant to the crime based upon his ownership of a dark blue Mercury Grand Marquis.

These deficiencies in the prosecution's evidentiary proof were not remedied by the existence of independent evidence corroborating the accomplice testimony that the complainant and Russman registered for a room at the Comfort Inn, that the bar at the Comfort Inn was closed, and that McMillan later registered for a room at the Pennsylvania motel where the four spent the night after the robbery. While this evidence confirms some of the details provided by the accomplices, it does not satisfy the fundamental purpose of the corroboration rule, which demands that the prosecution come forward with independent evidence tending to connect the defendant to the offense, rather than merely bolstering the credibility of the accomplices.

The prosecution's emphasis on evidence that the defendant, Spradley, and Russman were together in McMillan's apartment on the day they were arrested is also misplaced. Proof that these three individuals were found together three days after the robbery cannot be invested with corroborative significance because it does not independently establish that they were together at the time of the robbery, or that the defendant was one of the two African American males involved in the crime (*see People v Delgado,* 50 AD3d 915, 918 [2008]).

In the absence of sufficient evidence to corroborate the accomplice testimony which identified the defendant as one of the two armed robbers, the defendant's conviction of robbery in the first and second degrees, and menacing, cannot stand (*see People v Moses,* 63 NY2d 299 [1984]; *People v Delgado,* 50 AD3d 915 [2008]; *People v Picard,* 32 AD3d 317 [2006]; *People v McGrath,*

262 AD2d 1043 [1999]; *People v Potter,* 262 AD2d 1074 [1999]). The lack of legally sufficient evidence to establish the defendant's participation in the robbery also requires reversal of his conviction of criminal possession of a weapon in the fourth degree, which was predicated upon the defendant's possession of a dangerous instrument "with intent to use the same unlawfully upon another" (Penal Law § 265.01 [2]; *see generally People v King,* 265 AD2d 678 [1999]).