[710 NYS2d 228]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROOSEVELT SCOTT, JR., Also Known as Ro Ro, Appellant.

Fourth Department, July 7, 2000

**APPEARANCES OF COUNSEL**

*Phillip R. Hurwitz,* Rochester, for appellant.

*Howard R. Relin, District Attorney* of Monroe County, Rochester (*Loretta S. Courtney* of counsel), for respondent.

## OPINION OF THE COURT

HURLBUTT, J.

The issue presented on this appeal is whether Supreme Court properly denied the motion of defendant to suppress statements that he made to a hostage negotiator because he was not given *Miranda* warnings before making those statements. For the reasons that follow, we conclude that the judgment convicting defendant, upon his plea of guilty, of assault in the first degree (Penal Law § 120.10 [3]) should be affirmed.

On November 5, 1996 and November 22, 1996, defendant was involved in incidents during which he shot and injured three males and one female, respectively. Following the latter incident, defendant barricaded himself in a residence located in the City of Rochester and would not permit the occupants, including his girlfriend, her two children and another individual, to leave. Police surrounded the residence, and an investigator who specializes in hostage negotiations was summoned to the scene for the purpose of convincing defendant to surrender peacefully. The investigator began conversing with defendant via telephone from an adjacent residence, and the conversations were audiotaped. It is undisputed that the investigator did not administer *Miranda* warnings to defendant before conversing with him. During the conversations between defendant and the investigator, defendant pressed the investigator for information regarding the November 5 and 22, 1996 shootings and, when provided with such information, proceeded to implicate himself in both incidents. The record establishes that defendant, who was armed with a deadly weapon, was in a highly agitated, irrational state and made repeated threats to harm his hostages, himself and the police. After approximately nine hours of negotiations, defendant surrendered to the police. He was thereafter charged with, *inter alia*, three counts of attempted murder in the second degree and eight counts of assault in the first degree in connection with the November 5 and 22, 1996 shootings.

In an omnibus motion, defendant sought, *inter alia*, suppression of his statements made to the investigator during the hostage negotiations. Following a *Huntley* hearing, the court determined that defendant was neither in custody nor subjected to interrogation during the hostage negotiations and therefore refused to suppress the statements. In satisfaction of the indict-

ment, defendant pleaded guilty to one count of assault in the first degree.

Defendant contends that *Miranda* warnings were required because the investigator was interrogating him and he was in custody during such interrogation. It is well settled that the police must advise a suspect in custody of his constitutional rights before subjecting him or her to interrogation (*see, Miranda v Arizona*, 384 US 436; *see generally, People v Robbins*, 236 AD2d 823, *lv denied* 90 NY2d 863; *People v Fenton*, 234 AD2d 921, 922, *lv denied* 89 NY2d 1011). We conclude, however, that defendant was neither in custody nor subjected to interrogation.

Defendant, who was armed with a deadly weapon and holding hostages inside the residence, was not in police custody even though the residence was surrounded by police (*see, People v Treier*, 165 Misc 2d 665, 669; *cf., People v Manzella*, 150 Misc 2d 956, 960-962). No officer was physically in defendant's presence, and defendant retained a degree of freedom inconsistent with a formal arrest in that he had the ability to terminate communications at any time by hanging up the telephone (*see, People v Mayfield*, 14 Cal 4th 668, 733, 928 P2d 485, 521, *cert denied* 522 US 839). Nor was there a de facto arrest, where the particular detention or restriction of movement would lead reasonable persons innocent of any crime to believe that they were in custody had they been in defendant's position (*see, People v Yukl*, 25 NY2d 585, 589, *rearg denied* 26 NY2d 883, *cert denied* 400 US 851; *People v Ripic*, 182 AD2d 226, 230, *appeal dismissed* 81 NY2d 776, *rearg denied* 81 NY2d 954). "Although the presence of the [police] may have restricted defendant's freedom of movement and they would have attempted to prevent his leaving the area, it cannot be said that * * * reasonable person[s] innocent of any crime would have believed that [they were] under arrest at that point" (*People v Treier, supra*, at 669).

Nor was defendant subjected to interrogation. The Supreme Court has defined the term "interrogation" as "words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response" (*Rhode Island v Innis*, 446 US 291, 302). The Court in *Innis* noted that "the intent of the police * * * may well have a bearing on whether the police should have known that their words or actions were reasonably likely to evoke an incriminating response" (*Rhode Island v Innis, supra*, at 302, n 7). Here, the intent of the investigator was to persuade defendant to release

the hostages and to surrender peacefully rather than to elicit incriminating statements from defendant regarding the underlying shootings (*see, People v Treier, supra,* at 670; *see also, People v Gantz,* 104 AD2d 692, 693; *People v Mayfield, supra,* 14 Cal 4th, at 733, 928 P2d, at 521). Furthermore, the transcript of the conversations between defendant and the investigator establishes that any reference by the investigator to the underlying shootings was in response to the requests by defendant for information regarding the crimes for which he was a suspect (*see, People v Lynes,* 49 NY2d 286, 294).

In any event, even if defendant had been subjected to custodial interrogation, we would nevertheless conclude that the public safety exception to the *Miranda* rule would apply to render the statements admissible (*see, New York v Quarles,* 467 US 649; *People v Oquendo,* 252 AD2d 312, 315-316, *lv denied* 93 NY2d 901). In *Quarles,* the Supreme Court recognized that, in volatile situations such as this in which the police are confronting a suspect, "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination" (*New York v Quarles, supra,* at 657). Here, police were confronted with a volatile situation; defendant advised the investigator that he was armed and indicated a willingness to harm the hostages, the police and himself. Thus, because defendant posed a direct threat to the public safety, *Miranda* warnings were not required (*see, New York v Quarles, supra,* at 657-658; *People v Treier, supra,* at 670; *People v Manzella, supra,* at 961-962; *see also, State v Finch,* 137 Wash 2d 792, 828-830, 975 P2d 967, 990-991, *cert denied* — US —, 120 S Ct 285; *People v Mayfield, supra,* 14 Cal 4th, at 734, 928 P2d, at 521-522). As the court wrote in *Manzella* (*supra,* at 962), "[w]hile it is true * * * that once the police established extended contact with defendant, they had many opportunities to advise him of the *Miranda* warnings, to do so * * * would have only provided defendant with reason to discontinue communication, thereby destroying the one thing that was at least maintaining the status quo and that was probably preventing a more violent confrontation. To tell defendant that he had a right to remain silent and that what he said to the police could and would be used against him, obviously is in direct opposition to immediate safety considerations."

Accordingly, we conclude that the court properly refused to suppress defendant's statements to the investigator, and thus the judgment should be affirmed.

PIGOTT, JR., P. J., GREEN and WISNER, JJ., concur. Judgment unanimously affirmed.