■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SARAH J. LOWIN, Appellant. [896 NYS2d 231]—

Spain, J. Appeal from a judgment of the County Court of Tioga County (Sgueglia, J.), rendered June 16, 2008, convicting defendant following a nonjury trial of the crimes of grand larceny in the fourth degree (two counts) and making a punishable false written statement.

The charges against defendant stem from her admitted removal of two vehicles from property she leased to her stepdaughter, Jessica Lowin, and Lowin's boyfriend, Alfred Isbell Jr., after they moved out. It was undisputed that Lowin and Isbell had been paying defendant weekly rent to live in a trailer[1] for about six months, on property also containing the house where defendant resided, which was located in the Town of Barton, Tioga County. During that time, the battery died on a 1995 Oldsmobile

---

1. Lowin confusingly testified that her grandmother owned the property while defendant testified that she was the owner.

sedan owned by Lowin; she removed the car's plates, cancelled the insurance and left the car for several months in the yard beside the trailer. Isbell had borrowed a 1991 Ford pickup truck from his grandfather, promising to pay him for it; after the engine burned out and the transmission shaft broke, he removed the engine and left the truck in the yard for at least several months. After a series of disagreements with defendant, Lowin and Isbell moved out on July 1, 2007 and had no further contact with defendant until Lowin returned on July 16, 2007 and discovered that the two vehicles they had left behind were missing.

State Police were contacted the next day, and defendant falsely reported to Trooper Randy Smith that she did not know where the subject vehicles were. After contacting area tow truck companies, Smith learned that a tow truck operator, Brian Smith (who was also a neighbor to defendant), had towed the vehicles at defendant's request to a scrap metal yard run by Herman Rathke in the Town of Owego, Tioga County. Trooper Smith went to defendant's home on July 26, 2007 and took a written statement from her in which she indicated—under penalty of perjury—that the vehicles disappeared on July 10, 2007 while she was away from the property, and she did not know who took them. It was subsequently established at trial that defendant had arranged in early July to have Brian Smith tow the vehicles off of her property to Rathke's scrap yard, where Lowin's car had been shredded. The truck was still at the scrap yard.[2]

Indicted on two counts of grand larceny in the fourth degree for stealing the vehicles and making a punishable false written statement related to her statement to the trooper, defendant testified that she believed the vehicles had been abandoned by the tenants and that she had a right to have them removed from the property. While defendant testified that she received no money for the vehicles, Brian Smith testified that defendant paid him $150 to tow both vehicles and he gave defendant the $400 paid by Rathke for the vehicles. Defendant was convicted on all charges following a nonjury trial. She was sentenced to a three-year conditional discharge and required to pay restitution of $400. She now appeals.

Initially, County Court correctly denied defendant's motion, following a *Huntley* hearing, to suppress her statement to

---

**2.** The truck had an engine in its bed, but it was not conclusively established that this was the same engine that had burned out. Rathke subsequently paid Isbell's grandfather $200 to purchase the truck as scrap metal.

Trooper Smith, rejecting her contentions that it was involuntary or the product of a custodial interrogation. Trooper Smith's unrefuted testimony established that he drove his marked police vehicle to defendant's home during the afternoon, she came outside and agreed to give a written account; sitting in the front of the police vehicle, the trooper asked defendant a few questions, recording her answers in a written statement that defendant signed after it was read to her. No promises or threats were made during this brief time (about 19 minutes), defendant was not handcuffed, and she did not request to leave or ask for an attorney. A reasonable person in defendant's position would have believed that she or he was free to leave and, thus, the questioning was not custodial and *Miranda* warnings were not required (*see People v Paulman*, 5 NY3d 122, 129 [2005]; *People v Harris*, 48 NY2d 208, 215 [1979]; *see also People v Centano*, 76 NY2d 837, 838 [1990]). Further, the record reflects that the People proved the voluntariness of defendant's statement beyond a reasonable doubt (*see People v Baggett*, 57 AD3d 1093, 1094 [2008]). There was nothing coercive, accusatory or confrontational about the questioning or the setting (*see People v Barton*, 13 AD3d 721, 722 [2004], *lv denied* 5 NY3d 785 [2005]; *People v Marx*, 305 AD2d 726, 727 [2003], *lv denied* 100 NY2d 596 [2003]).

We are also unpersuaded by defendant's challenge to the larceny convictions as unsupported by legally insufficient evidence or against the weight of credible evidence. Defendant contends that the evidence established that the tenants had vacated the trailer and abandoned their inoperable junk vehicles on the rental property without ever indicating to her that they intended to return for them, and she reasonably believed that she had a right to dispose of them and did not harbor larcenous intent. Viewing the evidence in the light most favorable to the People and giving them the benefit of every favorable inference (*see People v Bleakley*, 69 NY2d 490, 495 [1987]), we find that legally sufficient evidence was adduced to establish that, acting with the intent to deprive the vehicle owners of their property or to appropriate it for her own use (*see* Penal Law § 155.05 [1]; § 155.00 [3], [4]), defendant wrongfully sold, i.e., stole, those motor vehicles,[3] each of which exceeded the $100 value threshold (*see* Penal Law § 155.30 [8]; *see also People v Jensen*, 86

---

3. We are not persuaded by defendant's claim, raised at trial, that these vehicles constitute "junk cars" under the Town of Tioga Junk Yard Ordinance, which defendant was required to dispose of. Defendant did not testify that she relied upon this ordinance, and we do not find that it negated her larcenous intent or established her claim of right. Moreover, defendant has not argued

NY2d 248, 252 [1995]; *People v Merante*, 59 AD3d 207, 208 [2009], *lv denied* 12 NY3d 856 [2009]). The evidence satisfied all of the elements of larceny.

The factfinder expressly discredited defendant's testimony that she believed the vehicles had been abandoned[4] and that she had a right to sell them (*see* Penal Law § 155.15 [defense of claim of right]), reasoning that if she believed she had acted lawfully, she would not have lied to police—about not knowing what happened to the vehicles—in order to protect the tow truck driver (as she testified). Examining the evidence further, while a different verdict would not have been unreasonable (*see People v Bleakley*, 69 NY2d at 495), we are satisfied that the verdict is supported by the weight of the credible evidence. While the tenants did not effectively communicate to defendant their intent to return for the vehicles,[5] her sale of them within approximately one week of their vacancy, her false statement to police, and her denial of receiving payment for them (which was contradicted by Brian Smith and Rathke's testimony) all support the inference of her larcenous intent and undermine her claim of right.

Defendant's remaining arguments have been considered and rejected.

Cardona, P.J., Peters, Stein and Garry, JJ., concur. Ordered that the judgment is affirmed.

---

that, due to their condition, the vehicles did not satisfy the definition of "motor vehicles" in Vehicle and Traffic Law § 125.

4. While a vehicle is deemed abandoned if, among other things, it is left unattended on the property of another without permission (*see* Vehicle and Traffic Law § 1224 [1] [d]), a private property owner is not thereby vested with ownership or the right to sell the vehicle and keep the proceeds.

5. Lowin testified that she left a note on a piece of wood next to her vehicle indicating she would be returning to claim the vehicles, but conceded that defendant may not have seen it. Lowin also testified that she called defendant, but defendant refused to speak with her.