■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT HOOK, Appellant. [914 NYS2d 755]—

Garry, J. Appeal from a judgment of the County Court of Warren County (Hall, J.), rendered January 14, 2009, upon a verdict convicting defendant of the crimes of aggravated sexual abuse in the first degree, attempted rape in the first degree, sexual abuse in the first degree, unlawful imprisonment in the first degree and criminal possession of a weapon in the fourth degree.

While defendant was incarcerated on an unrelated charge, the victim—his wife—informed him that she no longer wished to be married to him. Two days after defendant's release, the victim agreed to meet him for a conversation. She told police and several others, including a hospital sexual assault nurse who examined her on the following day, that defendant became angry with her during their meeting, sexually assaulted her and cut her genitals with a knife. Police found defendant at the home of a third party, confiscated two knives from his person, and arrested him after an interview in which, among other things, defendant denied having seen the victim at all on the evening in question.

The victim testified before a grand jury. Defendant was indicted for aggravated sexual abuse in the first degree, attempted rape in the first degree, sexual abuse in the first degree, unlawful imprisonment in the first degree, and criminal possession of a weapon in the fourth degree. Before trial, the victim recanted her statements implicating defendant. At defendant's jury trial, she testified that the sexual encounter was consensual and that defendant did not use a knife against her. Defendant

was convicted as charged and sentenced to an aggregate prison term of 20 years, and now appeals.

Defendant's claim that his convictions were not supported by legally sufficient evidence is unpreserved, as his motion to dismiss at the close of the People's case was not based on the grounds raised on appeal (*see People v Gray*, 86 NY2d 10, 19 [1995]; *People v Mann*, 63 AD3d 1372, 1373 [2009], *lv denied* 13 NY3d 861 [2009]). Nor do we find reason to reverse the convictions in the interest of justice, as sufficient evidence was presented to support the jury's conclusions (*see People v Bleakley*, 69 NY2d 490, 495 [1987]).

Defendant contends that County Court should have granted his motion to suppress evidence obtained when the police entered the third party's home without a search warrant, resulting in defendant's warrantless arrest. At the *Huntley* hearing, a police investigator testified that when he and two other officers went to the third party's home and asked whether defendant was inside, the third party responded that he was not sure, but invited the officers into the residence.[1] We find no reason to disturb the court's determination that the third party consented to the officers' entry and, therefore, the search and arrest were valid (*see People v Hardy*, 187 AD2d 810, 811-812 [1992]; *see also People v Gardner*, 45 AD3d 1371, 1371 [2007], *lv denied* 9 NY3d 1033 [2008]).

Defendant next contends that his interview by police at the third party's home was a custodial interrogation and, thus, that his statements in response to the officers' questions were obtained in violation of his *Miranda* rights. We disagree. An individual is subject to custodial interrogation when, given the circumstances of the questioning, "a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" (*People v Paulman*, 5 NY3d 122, 129 [2005]; *see People v Lowin*, 71 AD3d 1194, 1196 [2010]). The testimony at the suppression hearing established that, upon entering the third party's residence, the officers found defendant asleep in the living room. They awoke him and, after asking him if he had any weapons and confiscating two knives, asked him to go outside so they could talk. Defendant declined to do so but agreed to speak in the kitchen. During the interview, defendant sat at the kitchen table with the investigator. The third party and a uniformed officer were also present, and another officer was in the adjacent living room. Although no *Miranda* warnings were given to defendant before or during the interview, defend-

---

1. The third party gave testimony consistent with this account at trial.

ant selected the location, the questioning was relatively brief, the questions were not accusatory, defendant was not threatened, handcuffed or restrained in any way, and he did not request an attorney or ask for the questioning to stop. Thus, County Court properly denied defendant's motion to suppress (*see People v Roblee*, 70 AD3d 225, 230 [2009]; *People v Pouliot*, 64 AD3d 1043, 1044-1045 [2009], *lv denied* 13 NY3d 838 [2009]).

Finally, defendant contends that he received ineffective assistance in that his counsel failed to adequately cross-examine the victim or present an effective defense. To establish this claim, defendant was required to show that he was " 'deprived of a fair trial by less than meaningful representation; a simple disagreement with strategies, tactics or the scope of possible cross-examination, weighed long after the trial, does not suffice' " (*People v Miller*, 63 AD3d 1186, 1186 [2009], quoting *People v Flores*, 84 NY2d 184, 187 [1994]). During the victim's direct testimony, she stated that she was unwilling to testify and felt that she was being forced to do so. She then testified that her sexual encounter with defendant was consensual, that he did not use a knife, and that her clothing was ripped and her vagina injured when she slipped and defendant caught her to prevent her from falling. When the People confronted her with the inconsistent statements she had previously made to police and the grand jury (*see* CPL 60.35), she claimed that she had fabricated them and had been bribed by the People to testify.[2]

Defense counsel's cross-examination was notably brief. However, in view of the exculpatory version of events that the victim had already provided and the damage to her credibility that had occurred during direct examination—all of which was consistent with the defense strategy depicting the victim as an unreliable witness who had falsified her initial claims—the brevity of the cross-examination appears to have been "a trial strategy consciously adopted by defense counsel" (*People v Toland*, 2 AD3d 1053, 1057 [2003], *lv denied* 2 NY3d 808 [2004]). Moreover, assuming this objective, the cross-examination was not ineffective; defense counsel further damaged the victim's credibility by eliciting her admission that she had been criminally charged with falsifying statements pertaining to defendant's case. The record reveals that defense counsel engaged in vigor-

---

**2.** Defense counsel did not object to the introduction of the victim's prior inconsistent statements, but the record reveals that counsel for both sides anticipated their introduction during a previous bench conference in which they reviewed the applicable law with County Court and agreed upon the portions of the victim's prior statements that could be used. Defense counsel further ascertained that the court intended to provide the jury—as it did—with a prompt and appropriate limiting instruction (*see* CPL 60.35 [2]).

ous, effective cross-examination of the People's other witnesses, made appropriate pretrial motions and presented a consistent defense throughout the trial; his strategic decision not to present defense witnesses "should not be second-guessed" (*People v Cruz*, 61 AD3d 1111, 1112-1113 [2009]). Accordingly, we find no reason to conclude that defendant was deprived of meaningful representation (*see People v Benevento*, 91 NY2d 708, 712 [1998]; *People v Baldi*, 54 NY2d 137, 147 [1981]).

Defendant's remaining arguments have been examined and found to be without merit.

Spain, J.P., Lahtinen, Kavanagh and Stein, JJ., concur. Ordered that the judgment is affirmed.

