(July 19, 2012)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR A. PAGAN, Appellant. [948 NYS2d 757]—

Garry, J.

In 2004, a three-unit apartment building in the City of Gloversville, Fulton County was destroyed by fire. The purported tenants of this building were defendant, codefendant Aubrey Pagan and John Hart, and codefendant Jeffrey Alnutt owned the building. Investigators initially determined that the fire was accidental, but upon receiving new information in 2007, police reopened the investigation. Hart was granted immunity from prosecution and told police that he, defendant and Pagan had participated in a plot formulated by Alnutt to collect fraudulent insurance proceeds by burning down the building and making the fire appear accidental. During this period, defendant was in the U.S. Army, and stationed at Fort Bragg in North Carolina. He spoke by telephone with a detective and the Fulton County District Attorney, admitting during the conversation that he "had knowledge of" the fire and "was involved in it." Defendant offered to speak further with police upon his return to New York if he was granted immunity. Ultimately, he declined the offer of immunity and refused to speak further with investigators.

Defendant, Pagan and Alnutt were jointly indicted on multiple charges arising from the fire.[1] During their joint jury trial, defendant moved to suppress his statements from the telephone conversation. County Court denied the motion and admitted the statements into evidence solely against defendant. Defendant was convicted of insurance fraud in the third degree (two counts), grand larceny in the third degree (two counts), reckless endangerment in the second degree, conspiracy in the fourth degree and conspiracy in the fifth degree. He was sentenced to an aggregate prison term of 1⅓ to 4 years and ordered to pay restitution. Defendant appeals.

Initially, defendant contends that his convictions were not

---

1. Defendant married Pagan in 2006. Pagan and Alnutt, her father, were convicted of several crimes arising from the fire. The judgment against Pagan was previously affirmed (*People v Pagan*, 87 AD3d 1181 [2011], *lv denied* 18 NY3d 885 [2012]).

supported by legally sufficient evidence and were against the weight of the evidence. Specifically, he argues that the testimony of Hart—an accomplice as a matter of law—was insufficiently corroborated by evidence "tending to connect [him] with the commission of" the charged crimes (CPL 60.22 [1]). Corroborative evidence need not independently prove a defendant's involvement; the statutory requirements are satisfied if "read with the accomplice's testimony, [the evidence] makes it more likely that the defendant committed the offense, and thus tends to connect him [or her] to it" (*People v Reome*, 15 NY3d 188, 194 [2010]; *see People v Berry*, 78 AD3d 1226, 1227 [2010], *lv denied* 16 NY3d 828 [2011]). Here, defendant admitted to police that he was involved in the fire. Additionally, the People showed that he purchased renter's insurance about a month before the fire, made a claim afterward and was paid $10,000.[2] There was evidence that the electrical service for the upstairs apartment where defendant claimed to live was in Alnutt's name and that defendant actually shared Pagan's downstairs apartment. Alnutt's former wife testified that neither defendant nor Pagan had leases until after the fire, when she prepared backdated leases at Alnutt's request. There was also evidence that defendant purchased numerous items from a thrift shop in the months just before the fire, many of which were later found in the apartments; this was consistent with Hart's testimony that the plan called for placing furnishings in the apartments to drive up the insurance claims. Finally, a fire investigator testified that he found evidence of an "extreme burn pattern" caused by an unknown substance on a kitchen floor where Hart testified that he and Alnutt spread an accelerant when they started the fire. This and other evidence amply met the "minimal requirements" of corroborating evidence (*People v Jones*, 85 NY2d 823, 825 [1995]; *accord People v Gilbo*, 52 AD3d 952, 954 [2008], *lv denied* 11 NY3d 788 [2008]). Thus, viewing the evidence in the light most favorable to the People, we find "a valid line of reasoning and permissible inferences that could lead a rational person to the conclusion reached by the jury" (*People v Vargas*, 60 AD3d 1236, 1237 [2009], *lv denied* 13 NY3d 750 [2009] [internal quotation marks and citations omitted]; *see People v Self*, 75 AD3d 924, 925 [2010], *lv denied* 15 NY3d 895 [2010]). There was some evidence to rebut the People's proof, including the testimony of a fire investigator who provided alternate interpretations of the burn-pattern evidence. Nonetheless, evaluating the evidence in a neutral light, and according deference to the

---

**2.** An investigator testified that it was unusual for tenants in the Gloversville area to carry such insurance.

jury's credibility assessments, we find that the verdict was not against the weight of the evidence (*see People v Berry*, 78 AD3d at 1227).

Defendant next contends that his telephone statements regarding his involvement in the fire should have been suppressed because he was subject to custodial interrogation and was not given *Miranda* warnings. County Court determined that although defendant was interrogated, he was not in custody and therefore no *Miranda* warnings were required. We agree. "The standard for assessing a suspect's custodial status is whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" (*People v Paulman*, 5 NY3d 122, 129 [2005] [citations omitted]). Factors to be considered include the location, length and atmosphere of the questioning, whether police significantly restricted defendant's freedom of action, the degree of defendant's cooperation, and whether the questioning was accusatory or investigatory (*see People v McCoy*, 89 AD3d 1218, 1219 [2011], *lv denied* 18 NY3d 960 [2012]; *People v Johnston*, 273 AD2d 514, 515 [2000], *lv denied* 95 NY2d 935 [2000]). During the *Huntley* hearing, a police sergeant testified that defendant—who knew the sergeant personally—telephoned him at home and said that he had heard that investigators wanted to talk with him, and that he did not want them to come to North Carolina but would speak with them when he was in New York on leave. The sergeant agreed to forward the request to investigators, and did so. A detective testified that the Fulton County District Attorney subsequently asked him to be present in her office during a telephone call from defendant in North Carolina. The call was received by speaker phone, and the detective and the District Attorney spoke with defendant and Joel Abelove, who identified himself as an attorney with the Judge Advocate General's office and, according to the detective, said that he was representing defendant. The detective told defendant he wanted to speak with him about the fire. Defendant responded that he had some involvement in it and would talk with police about it in New York, but only if he received immunity and no investigators went to North Carolina. The detective agreed, and the District Attorney arranged to email an immunity agreement to Abelove. The detective acknowledged that he did not administer *Miranda* warnings.

Defendant testified that Abelove was not his attorney, directed him to speak with the District Attorney about the fire, and never told him that he did not have to participate in the conversation. Defendant testified that he ended the conversa-

tion by asking investigators not to come to Fort Bragg; he acknowledged that no one did so and that an immunity agreement was sent to Abelove. We note that this conversation took place while defendant was hundreds of miles away from police in another state, and defendant could have ended it at any time simply by hanging up the phone (*compare People v Scott*, 269 AD2d 96, 98 [2000], *lv denied* 95 NY2d 892 [2000]). Defendant did in fact end the conversation on his own terms, after obtaining the agreement he had initially requested. The conversation lasted only a few minutes, and the questioning was limited to the detective's statement that he wanted to speak to defendant about the fire. Accordingly, County Court correctly determined that a reasonable person would not have believed that he or she was in custody during this conversation, and that *Miranda* warnings were not required (*compare People v Hook*, 80 AD3d 881, 882-883 [2011], *lv denied* 17 NY3d 806 [2011]; *People v Lowin*, 71 AD3d 1194, 1195-1196 [2010]; *People v Neil*, 24 AD3d 893, 893-894 [2005]).[3]

We reject defendant's contention that he did not receive a full *Huntley* hearing. Although County Court referenced making a "threshold determination," a complete hearing was in fact conducted. The record reveals that both parties had a full and fair opportunity to present evidence and cross-examine witnesses, such that the proceeding constituted "an adequate evidentiary hearing productive of reliable results" (*Jackson v Denno*, 378 US 368, 394 [1964]; *see People v Hamlin*, 71 NY2d 750, 761 [1988]; *People v Huntley*, 15 NY2d 72, 78 [1965]). Further, contrary to defendant's contention, it was not necessary to determine whether Abelove had acted as his attorney, as the right to counsel had not yet attached at the time of the telephone conversation (*see People v Ramos*, 99 NY2d 27, 32-33 [2002]; *People v Caruso*, 34 AD3d 860, 861-862 [2006], *lv denied* 8 NY3d 879 [2007]).

The detective's trial testimony that Abelove said he was defendant's attorney did not constitute testimonial hearsay in violation of the Confrontation Clause of the Sixth Amendment, as the statement was not pertinent to defendant's guilt or innocence of any element of the charged crimes and did not " 'establish or prove past events potentially relevant to later crimi-

---

**3.** Defendant also argues that the detective should have known that his statements to defendant were reasonably likely to elicit an incriminating response; however, this standard applies to whether an interrogation has occurred, not to whether a defendant is in custody (*see People v Ferro*, 63 NY2d 316, 322-323 [1984], *cert denied* 472 US 1007 [1985]; *People v Van Patten*, 48 AD3d 30, 34 [2007], *lv denied* 10 NY3d 845 [2008]).

nal prosecution' " (*People v Hulbert*, 93 AD3d 953, 953 [2012], quoting *Davis v Washington*, 547 US 813, 822 [2006]). Finally, we reject defendant's contention that County Court erred by denying his request for a circumstantial evidence charge. While such instructions are required when all of the elements of the charges against a defendant depend entirely on circumstantial evidence, here all of the charges were also supported by direct evidence, including Hart's accomplice testimony (*see People v Saxton*, 75 AD3d 755, 758 [2010], *lv denied* 15 NY3d 924 [2010]; *People v Rosica*, 199 AD2d 773, 774 [1993], *lv denied* 83 NY2d 876 [1994]; *People v McDermott*, 185 AD2d 384, 386 [1992], *lv denied* 80 NY2d 906 [1992]; *see also People v Walker*, 274 AD2d 600, 601 [2000], *lv denied* 95 NY2d 908 [2000]).

Peters, P.J., Lahtinen, Malone Jr. and Stein, JJ., concur. Ordered that the judgment is affirmed.