■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY ALNUTT, Appellant. [957 NYS2d 412]—

Garry, J.

Defendant, the daughter and the son-in-law were charged in a joint indictment with crimes arising from the fire. Following a joint jury trial, defendant was convicted of arson in the third degree, insurance fraud in the second degree, insurance fraud in the third degree (two counts), grand larceny in the second degree, grand larceny in the third degree (two counts), reckless endangerment in the second degree, conspiracy in the fourth degree and conspiracy in the fifth degree. Defendant's motion to set aside the verdict pursuant to CPL 330.30 was denied and he was thereafter sentenced to an aggregate prison term of 5 to 15 years and ordered to pay restitution. Defendant appeals.

Initially, defendant contends that his convictions were not supported by legally sufficient evidence and were against the weight of the evidence because the testimony of Hart, an accomplice as a matter of law (*see* CPL 60.22 [2] [a]), was insufficiently corroborated. We disagree, finding that the People met their burden to offer credible, probative evidence that corroborated Hart's testimony by connecting defendant with the commission of the charged crimes (*see People v Reome*, 15 NY3d 188, 191-192 [2010]; *People v Lee*, 80 AD3d 877, 878 [2011], *lv denied* 16 NY3d 832, 833, 834 [2011]). Hart testified that defendant invited him to participate in a scheme to burn the building and divide the insurance proceeds; under the plan, Hart signed a lease and obtained renter's insurance although he did not live in the building, and provided defendant with possessions to be placed in the building to increase the value of the insurance claim. According to Hart, he, defendant, the daughter and the son-in-law met in the daughter's apartment on the night of the fire; as part of the plan to make the fire appear accidental, the daughter was cooking. Hart testified that after the daughter and son-in-law left the building, he helped defendant spread accelerants that, according to defendant, would not be detectable by investigators after the fire. To create the appearance of an accident, the stove burners were left on, and defendant ignited the conflagration by setting fire to a roll of paper towels and tossing them toward the stove.

Nonaccomplice evidence connecting defendant to the crimes included the testimony of a witness who visited the building on

the night of the fire and found defendant present with the son-in-law, a third man unknown to the witness and the daughter, who was cooking. An insurance representative testified that following the fire, defendant submitted an insurance claim that included a claim for lost rent, although there was other evidence that the daughter and son-in-law did not pay rent and that leases defendant submitted in support of this claim were not generated until after the fire. Defendant was seen after the fire wearing a ring that Hart had included in his renter's insurance claim, and defendant's handwriting appeared on a list of stamps and coins that Hart also submitted to his insurer; Hart later testified that these items belonged to defendant. Defendant's name appeared on the utility account for the apartment where the son-in-law purportedly resided, and there was evidence that the son-in-law did not live there (*see People v Pagan*, 97 AD3d 963, 965 [2012]). Extensive additional corroborative evidence—including a fire investigator's testimony that, although no traces of accelerant were found, unusual burn patterns in the building suggested that the fire was intentionally set—has been examined by this Court in connection with the appeals filed by the daughter and son-in-law (*id.*; *People v Pagan*, 87 AD3d 1181, 1182 [2011]). Cumulatively, the nonaccomplice evidence amply provided the required "slim corroborative linkage" to Hart's testimony (*People v Breland*, 83 NY2d 286, 294 [1994]; *accord People v Reome*, 15 NY3d at 192). Thus, the evidence was legally sufficient to permit the jury to conclude that all of the elements of the crimes of which defendant was convicted were established beyond a reasonable doubt (*see People v Berry*, 78 AD3d 1226, 1228 [2010], *lv denied* 16 NY3d 828 [2011]; *People v Self*, 75 AD3d 924, 925-926 [2010], *lv denied* 15 NY3d 895 [2010]). Further, although a different verdict would not have been unreasonable, considering the evidence in a neutral light and giving the appropriate deference to the jury's credibility assessments and resolution of conflicting evidence, we are satisfied that the verdict is not against the weight of the evidence (*see People v Gilbo*, 52 AD3d 952, 954 [2008], *lv denied* 11 NY3d 788 [2008]).

We discern no error in County Court's *Sandoval* ruling. In response to the People's request to cross-examine defendant about seven prior convictions and a lengthy list of bad acts, the court permitted inquiry into only two convictions. As to the first of these, the court limited potential prejudice by permitting the People to establish that defendant had been found guilty of a federal felony without allowing any reference to the specific nature of the crime—that is, weapons sale. The People were further permitted to inquire about a 1987 bail-jumping convic-

tion without mentioning the charges that defendant was facing when he absconded. While this offense was remote in time, "[t]here are no per se rules that require preclusion of prior convictions due to their age, nature or number" (*People v Jones*, 70 AD3d 1253, 1254 [2010]; *see People v Ward*, 27 AD3d 776, 777 [2006], *lv denied* 7 NY3d 764 [2006]). Both convictions reflected defendant's willingness to place his interests above those of society, and the court properly balanced their probative value against the risk of unfair prejudice (*see People v Phelan*, 82 AD3d 1279, 1282 [2011], *lv denied* 17 NY3d 799 [2011]; *People v Peele*, 73 AD3d 1219, 1220 [2010], *lv denied* 15 NY3d 893, 894 [2010]; *People v Collins*, 56 AD3d 809, 810 [2008], *lv denied* 11 NY3d 923 [2009]).

Defendant's constitutional right to confront witnesses (*see Crawford v Washington*, 541 US 36 [2004]; *Bruton v United States*, 391 US 123 [1968]) was not violated by the use at trial of a statement in which the son-in-law told police that he "had knowledge" of and "was involved in" the fire. The statement was admitted solely as evidence against the son-in-law, the jury was repeatedly given instructions to that effect and the statement neither mentioned defendant nor implicated him in any wrongdoing (*see People v Pagan*, 87 AD3d at 1183-1185; *compare People v Hardy*, 4 NY3d 192, 197-198 [2005]; *People v Pinto*, 56 AD3d 956, 958 [2008]). Further, County Court did not err in denying defendant's request for a circumstantial evidence instruction, as none of the charges against him were supported solely by such evidence (*see People v Pagan*, 97 AD3d at 968; *People v Varmette*, 70 AD3d 1167, 1171 [2010], *lv denied* 14 NY3d 845 [2010]).

Next, defendant contends that testimony given by his former wife violated the marital privilege pursuant to CPLR 4502 (b).[2] Notably, defendant made no objection on this ground before or during the former wife's testimony, but even if his belated general objection sufficiently preserved the claim (*see* CPL 470.05 [2]), the verdict need not be disturbed for this reason. The former wife testified at length. Much of her testimony was in regard to matters that did not involve communications with defendant, but rather arose from her personal knowledge of his rental properties and her involvement in defendant's business activities, such as preparing tax documents for the accountant each year and—after the fire—using a computer program to generate leases for the daughter and son-in-law. Near the end of her direct testimony, she was asked why she generated the leases, and responded that defendant asked her to do so to prove

---

2. Defendant and the former wife divorced after the fire.

lost rent for his insurance claim. Defense counsel thereafter elicited further testimony about this request during cross-examination. As a communication between spouses, the former wife's testimony about defendant's request was "presumed to have been conducted under the mantle of confidentiality" (*People v Starr*, 213 AD2d 758, 759 [1995], *lv denied* 85 NY2d 980 [1995] [internal quotation marks and citation omitted]; *see People v Fediuk*, 66 NY2d 881, 883 [1985]). Defendant did not waive the privilege by submitting the leases to his insurer, as this revealed only that the leases existed, but not the substance of the challenged communication (*see Matter of Vanderbilt [Rosner—Hickey]*, 57 NY2d 66, 74 [1982]; *compare People v Weeks*, 15 AD3d 845, 846 [2005], *lv denied* 4 NY3d 892 [2005]). Nonetheless, given the limited nature of the former wife's testimony regarding the request and the other extensive evidence of defendant's guilt, we find no significant probability that the jury would have acquitted defendant if the confidential communication had not been admitted; thus, the error was harmless (*see People v Marinaccio*, 15 AD3d 932, 933 [2005]; *People v Knights*, 131 AD2d 924, 926 [1987], *lv denied* 70 NY2d 713 [1987]).

We likewise reject defendant's contention that County Court improperly refused his request to call as a witness a police detective who, according to defendant, would have testified that the scope of immunity offered to Hart was greater than Hart stated during his testimony. Defendant asserts that this testimony would have revealed that Hart had been caught filing a fraudulent insurance claim and thus established his motivation to fabricate a story implicating defendant. As "extrinsic proof tending to establish a reason to fabricate is never collateral and may not be excluded on that ground" (*People v Hudy*, 73 NY2d 40, 56 [1988]), the court erred in denying the request. Nonetheless, defendant did not establish that he was prejudiced by the preclusion, as the testimony would have been cumulative of other evidence—including Hart's own testimony—regarding his agreement to testify in exchange for a broad grant of immunity (*see People v Islam*, 22 AD3d 599, 599-600 [2005], *lv denied* 6 NY3d 754 [2005]). Accordingly, this error was harmless.

For the first time on appeal, defendant contends that his right to a speedy trial under the Interstate Agreement on Detainers Act was violated (*see* 18 USC Appendix 2, § 2, art IV [c], [e]; CPL 580.20, art IV [c], [e]). Even if this claim had been preserved (*see People v Primmer*, 46 NY2d 1048, 1049 [1979]), it cannot be addressed on direct appeal as it involves matters outside of the record (*see People v Bianca*, 91 AD3d 1127, 1130

[2012], *lv denied* 19 NY3d 862 [2012]; *People v Bethune*, 65 AD3d 749, 751 [2009]). For the same reason, defendant's claim that he received ineffective assistance of counsel would be more appropriately reviewed through a motion pursuant to CPL article 440 (*see People v McCray*, 96 AD3d 1160, 1161 [2012], *lv denied* 19 NY3d 1104 [2012]; *People v Varmette*, 70 AD3d at 1172). To the extent that the claimed ineffective assistance is based upon the record, we note that defendant's counsel made appropriate motions before, during and after the trial, raised relevant objections, conducted vigorous and effective cross-examination and made cogent arguments to the jury; thus, defendant received meaningful representation (*see People v Bahr*, 96 AD3d 1165, 1166 [2012], *lv denied* 19 NY3d 1024 [2012]).

Finally, we are unpersuaded by defendant's claim that his sentence is harsh and excessive. Given his criminal history and complete lack of remorse for, among other things, involving his daughter and son-in-law in criminal activity for his own financial gain, we find no abuse of discretion or extraordinary circumstances warranting modification (*see People v Mangan*, 258 AD2d 819, 822 [1999], *lv denied* 93 NY2d 927 [1999]). Defendant's remaining contentions, including those raised in his pro se submissions, have been examined and found to be without merit.

Mercure, J.P., Lahtinen, Malone Jr. and Stein, JJ., concur. Ordered that the judgment is affirmed.