Stein, J.
Appeal from a judgment of the County Court of Schenectady County (Giardino, J.), rendered May 25, 2010, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, assault in the first degree, attempted assault in the first degree, assault in the second degree (three counts), criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree and reckless endangerment in the first degree (six counts).
Following an altercation in a crowded diner in the City of Schenectady, Schenectady County in the early morning hours of August 6, 2006, defendant fired a handgun at least seven times, shooting his apparent target three times and hitting three other *1030 patrons with the hail of bullets. A 2010 jury trial ensued,[1] after which defendant was found guilty of attempted murder in the second degree, assault in the first degree, attempted assault in the first degree, assault in the second degree (three counts), criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree and reckless endangerment in the first degree (six counts). He was thereafter sentenced by County Court to an aggregate prison term of 39 years followed by 15 years of postrelease supervision. Defendant appeals and we modify.
Initially, defendant contends that his convictions — and, in particular, the jury’s finding that he was the perpetrator of the subject crimes — are against the weight of the evidence. To establish its case, the People elicited the testimony of several witnesses who identified defendant as the shooter. Ishmael Robinson, who was shot in the stomach during the incident, testified that he was standing approximately three feet away from defendant when the shots were fired and that defendant was the shooter. Similarly, Moses Jackson testified that he saw defendant, who was standing by the front door of the diner with a black handgun, fire a shot into the air, after which he heard several more shots as he scrambled for cover. Notably, the crime laboratory expert who examined the seven expended bullet casings found at the scene testified that the rounds had all been discharged from the same weapon. Nicole Davis, a patron sitting in a booth just a few feet from defendant, also identified him as the shooter. There was testimony that the shooter was the same individual, identified as defendant, who had intervened in an argument between Carvel Griffin — the apparent target of the assault who was shot three times — and another person moments earlier. In addition, defendant was identified as the person wearing a dark shirt and white cap on the diner’s surveillance videotape by several witnesses who knew him well, and the owner of the diner also identified him as the shooter from that videotape.
To rebut this evidence, defendant presented several witnesses who testified that he was not the assailant. Griffin, who was serving a federal prison sentence at the time of trial, testified that defendant was not the shooter. Significantly, Griffin also testified that he believed that being an informant was a bad *1031 thing and acknowledged that, when approached in jail by an investigator from the District Attorney’s office, he reminded the investigator, who had known him for 15 years, that he had never before provided information. Cherese Snare, another diner patron who was grazed by a bullet, also testified that defendant was not the shooter. However, her testimony was plagued with inconsistencies; upon cross-examination, Snare provided conflicting accounts of whether she had seen a gun, her whereabouts directly following the incident, whether she was high on drugs the night of the incident and whether prosecutors had asked her to lie about defendant’s involvement. Snare also acknowledged several past instances in which she had refused to cooperate with the District Attorney’s office.
While many of the witnesses had extensive criminal records and some of the prosecution witnesses had pending charges against them reduced in exchange for their cooperation, those circumstances were fully explored during cross-examination, and the jury chose to believe the testimony of the People’s witnesses (see People v Wingo, 103 AD3d 1036, 1037 [2013]; People v Jones, 101 AD3d 1241, 1242 [2012]). Thus, even though a different verdict would not have been unreasonable, when we view the trial evidence in a neutral light, along with the rational inferences to be drawn therefrom, and defer to the credibility determinations made by the jury, we find the verdict to be in accord with the weight of the evidence (see People v Rivera, 101 AD3d 1478, 1479-1481 [2012], lv denied 20 NY3d 1103 [2013]; People v Castellano, 100 AD3d 1256, 1258 [2012], lv denied 20 NY3d 1096 [2013]).
However, we agree with defendant that his convictions of six counts of reckless endangerment in the first degree must be dismissed as duplicitous. To avoid the prohibition against duplicity, an indictment must provide the accused with notice of the nature of the charges and the time and place of the underlying conduct with sufficient specificity so as to enable him or her to prepare an adequate defense, assure that the jury has reached a unanimous verdict on each count and, if convicted, to protect against subsequent prosecutions for the same conduct under the bar of double jeopardy (see People v Alonzo, 16 NY3d 267, 269 [2011]; People v Bauman, 12 NY3d 152, 154-155 [2009]; People v Keindl, 68 NY2d 410, 416-417 [1986]).
Here, County Court found that the original indictment, which included seven counts of reckless endangerment, did not provide sufficient information to enable defendant to distinguish each count. Rather than identify each count temporally or by physical evidence, the People sought to remedy the defect by provid *1032 ing the name of an intended victim for each count. However, reckless endangerment is a conduct-specific, rather than a victim-specific, crime (see People v Watson, 299 AD2d 735, 737 [2002], lv denied 99 NY2d 633 [2003]; People v Stockholm, 279 AD2d 704, 706 [2001], lv denied 96 NY2d 807 [2001]). Thus, despite the amendment, the conduct underlying each count of the indictment remained unclear, as none of the seven shots fired hit any of the individuals named in the indictment.[2] As a result, there is simply no way to match each count of the indictment with the specific underlying conduct of defendant that would insure that the jury had reached a unanimous verdict with regard to each count and, therefore, the reckless endangerment counts must be dismissed as duplicitous (see People v Black, 65 AD3d 811, 813-814 [2009], lv denied 13 NY3d 905 [2009]; People v Dalton, 27 AD3d 779, 781 [2006], lv denied 7 NY3d 754 [2006]).
We reject defendant’s contention that County Court erred in permitting the People to question Jackson about a prior statement he made to police. While the testimony of a trial witness may not ordinarily be bolstered by pretrial statements, where that testimony has been either directly or inferentially assailed as a recent fabrication, prior consistent statements that predate the motive to give false testimony may be introduced for rehabilitation (see People v McDaniel, 81 NY2d 10, 16 [1993]; People v Callicut, 101 AD3d 1256, 1262-1263 [2012], lv denied 20 NY3d 1096 [2013]; People v Hughes, 287 AD2d 872, 876 [2001], lv denied 97 NY2d 656 [2001]). Here, Jackson testified for the People that he saw defendant, with a pistol in his hands, fire a shot upwards. During cross-examination, defense counsel fully explored two incidents involving fraudulent acts — one in November 2006 and the other in March 2007 — for which felony charges were brought against Jackson. Defense counsel also questioned Jackson about a letter he had written to the Schenectady County District Attorney in May 2007 seeking consideration in exchange for his cooperation in cases including defendant’s and the fact that Jackson had, indeed, received favorable dispositions of the charges against him. In addition, counsel questioned Jackson about a statement he made during defendant’s first trial that he had “never seen [defendant] actually shoot” during the incident at the diner, creating the inference that Jackson’s favorable plea deals provided the motiva *1033 tion for him to fabricate his present testimony that he did see defendant fire the handgun.
In response, the People sought to introduce a statement given by Jackson to police in August 2006 that he saw defendant fire a handgun during the incident. Because this statement predated the charges against Jackson that might have given him reason to testify falsely, Count Court did not err in allowing the People to question Jackson about the statement after issuing a proper limiting instruction (see People v Callicut, 101 AD3d at 1263; People v Garrett, 88 AD3d 1253, 1254-1255 [2011], lv denied 18 NY3d 883 [2012]).
Nor do we find merit to defendant’s pro se contentions, including that he was deprived of the effective assistance of counsel. Defendant has failed to show that the alleged shortcomings of counsel were not legitimate strategic decisions (see People v Izzo, 104 AD3d 964, 967 [2013]; People v Jones, 101 AD3d 1241, 1242-1243 [2012]). Moreover, counsel made appropriate motions — including one that preserved defendant’s argument that the reckless endangerment counts were duplicitous— pursued a credible defense based on misidentification that was supported by vigorous cross-examination of witnesses, and otherwise provided defendant with meaningful representation (see People v Alnutt, 101 AD3d 1461, 1466 [2012]; People v Kindred, 100 AD3d 1038, 1041 [2012], lv denied 21 NY3d 913 [2013]).
We are also unpersuaded that defendant’s sentences were excessive or that they were imposed as punishment for exercising his right to a trial. Given the nature of his offenses — defendant fired at least seven rounds at close range in a crowded diner — and considering that County Court informed him before trial of the maximum potential sentence and that he never took responsibility or showed remorse for the crime, we discern no abuse of discretion or extraordinary circumstances that would warrant a reduction of his sentence in the interest of justice (see People v Thomas, 105 AD3d 1068, 1072 [2013]; People v Molina, 73 AD3d 1292,1293 [2010], lv denied 15 NY3d 807 [2010]; People v Brown, 46 AD3d 949, 952 [2007], lv denied 10 NY3d 808 [2008]).
We have considered defendant’s remaining contentions and find them to be unpersuasive.
Peters, P.J., Lahtinen and Garry, JJ., concur. Ordered that the judgment is modified, on the law, by reversing so much thereof as convicted defendant of six counts of reckless endangerment in the first degree under counts 9, 11, 12, 13, 14 and 15 of the indictment; said counts dismissed and sentences imposed thereon vacated; and, as so modified, affirmed.

. Following a jury trial in 2008, defendant was convicted of multiple charges arising from the 2006 shooting. However, pursuant to a CPL 330.30 motion by defendant, County Court set aside the verdict finding that juror misconduct may have affected his substantial right to an impartial jury and a fair trial, and this Court affirmed (68 AD3d 1155 [2009]).

. Adding to the confusion was the fact that in defendant’s first trial, County Court dismissed one count of reckless endangerment in the first degree (count 10) at the conclusion of the People’s case, concluding that there was no evidence that the alleged “victim” was present in the diner.