OPINION OF THE COURT
Hunter, Jr., J.
Judgment of conviction, rendered December 9, 2009, reversed, on the law and on the facts, accusatory instrument dismissed and fíne and surcharge, if paid, remitted.
On the evening of December 19, 2008, defendant was arrested for trespass at Manhattan’s Taft Houses, a public housing development consisting of nine almost identical brown brick buildings. According to defendant, he was there to visit a longtime family friend for dinner and provide her with computer assistance, but mistakenly entered the wrong building directly across the street. Following his arrest, defendant was charged by misdemeanor complaint with second-degree criminal trespass (Penal Law § 140.15), but in a subsequent prosecutor’s information, the charge was reduced to one count of criminal trespass in the third degree (Penal Law § 140.10 [a]).
At the nonjury trial, the arresting officer, Raquel Marte, was the prosecution’s sole witness. She testified, inter alia, that on December 19, 2008, she was on “vertical patrol” at one of the Taft Houses buildings, located at 65 East 112th Street. She testified that tenants would access the building by using a key or the intercom and that there were “no trespassing” signs posted. She could not recall if the locks on the entrance doors to the building were working that day and could not recall exactly where the “no trespassing” signs were posted. She went on to testify that the entrance doors to the building were not always locked. She observed the defendant enter the building but was not able to state how the defendant gained entry. She then observed defendant board an elevator within a minute of his entering the building. She and her partner boarded an adjacent elevator to the 19th floor. However, she stated that the elevator stopped on the 11th floor, at which time she observed defendant standing in the hallway. Marte and her partner continued up to the 19th floor where they patrolled the roof before taking the stairs down to the 18th floor. Marte testified that she then *75 observed defendant standing in the hallway of the 18th floor. She approached him and asked him if he lived in the building. Defendant informed her that he did not live in the building but was visiting an aunt who was a tenant in the building and that he also had friends in the building. Defendant could not provide an apartment number or the name of his aunt or friends. Defendant was then arrested and searched. No drugs or weapons were found on his person.
Defendant testified that while he was a student at the State University of New York at Albany, he became close friends with a classmate named Charee Walker and subsequently developed a close relationship with her mother, Laurie Holder, whom he referred to as his “aunt.” Defendant testified that Ms. Holder lived in the Taft Houses and he visited her 10 to 15 times over a 10-year period prior to December 2008. However, he had not visited her in 2008.
Defendant further testified that he had spoken to Ms. Holder by telephone on December 18, 2008, and arranged to visit her the next day to help her with some computer problems and to have dinner. The next day, he took the subway to Taft Houses to see Ms. Holder and when he got off the subway at 110th Street, “it was dark” and he had not been “in that area a while.” He “did notice some changes” but stated that “for the most part everything was the same.” He proceeded to walk to 112th Street and stated that he crossed a parking lot connected to a walkway which was significant to him because a similar parking lot and walkway was in front of 1695 Madison Avenue where Ms. Holder lives. However, he instead entered 65 East 112th Street.
Defendant testified that he gained access to 65 East 112th Street as another individual exited the building and he took the elevator to the 18th floor. He exited on the 18th floor and “realized that it probably wasn’t the right floor” as it did not look familiar to him. He knocked on the door to an apartment he believed was Ms. Holder’s, but no one answered, and by that time he “was pretty sure that it wasn’t the right floor.” He took the stairs down to the 14th floor and exited the staircase to see if it “looked like the right one”; since that one did not look familiar to him, he continued to go down the stairs and exited on the 11th floor to call Ms. Holder because he “didn’t think it would be safe to go all the way downstairs.”
While he was searching for Ms. Holder’s number on his cell phone, he was approached by Marte and her partner who asked *76 him if he lived in the building, what he was doing in the building and if he knew anyone who lives in the building. Defendant informed them that he was “visiting friends” and that his “aunt” lived in the building. When asked where his aunt lived, he testified that he told the officers, “I thought she lived on the 18th floor but I am calling her right now to go check because I had the floor wrong.” He testified that Marte did not permit him to make a phone call. He informed her that he was on probation and if he was permitted to make a phone call it would “clear everything up.” She refused and he was arrested.
Defendant admitted that there was no blood relation between him and Ms. Holder. He explained that he referred to her as his “aunt” at the time of the arrest “to create an understanding” that it was “somebody older” and not just a “buddy” or “pal,” but he was nevertheless arrested.
Ms. Holder also testified for the defense and essentially corroborated defendant’s assertions. Ms. Holder confirmed that she had known defendant since 1997 and that he was the “son” she never had. She testified that he called her “mom” and confirmed that she invited defendant to her apartment on the evening of December 19, 2008 to fix her computer and have dinner. Ms. Holder also testified that she lives on the 18th floor of 1694 Madison Avenue, not 1695 Madison Avenue, and that defendant “constantly called” her to confirm what floor she lived on. She testified that Taft Houses is comprised of at least 10 buildings that are the same shape and height and arrangement with the only visible difference being a colored strip “in the middle” that is “not very visible” and to notice it one would “have to know it to look for it.”
Ms. Holder further testified that there is a parking lot in front of her building and acknowledged that there was one in front of 65 East 112th Street. The only difference is that the one in front of her building is “directly in front” and the parking lot in front of 65 East 112th Street is “slightly to the side.” She also testified that the intercom system in her building does not work and the directory listing residents was incomplete and she did not know whether or not her name was listed. She also testified that the door to her building “hasn’t been locked in years.”
Ms. Holder testified that after receiving the telephone call from defendant notifying her of his arrest, she contacted 311 and eventually filed a complaint with the “complaint bureau” about the fact that her invited guest had been arrested for *77 trespassing. Following the trial, Criminal Court convicted defendant of criminal trespass in the third degree. This appeal ensued, and we reverse.
With respect to the weight of the evidence, “in conducting its weight of the evidence review, a court must consider the elements of the crime, for even if the prosecution’s witnesses were credible their testimony must prove the elements of the crime beyond a reasonable doubt” (People v Danielson, 9 NY3d 342, 349 [2007]). The court must determine, viewing the evidence in the light most favorable to the prosecution, whether there is a valid line of reasoning and permissible inferences from which the factfinder could have found the elements of the crime proved beyond a reasonable doubt (see People v Steinberg, 79 NY2d 673, 681-682 [1992]).
A conviction based on legally sufficient evidence is subject to this court’s factual review power to assure that the verdict is supported by the weight of the evidence. “If based on all the credible evidence a different finding would not have been unreasonable, then the appellate court must, like the trier of fact below, ‘weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony’ ” (People v Bleakley, 69 NY2d 490, 495 [1987], quoting People ex rel. MacCracken v Miller, 291 NY 55, 62 [1943]).
To convict a person for criminal trespass in the third degree, the prosecution is required to prove that the person knowingly entered or remained unlawfully in a building (see Penal Law § 140.10). A person knowingly enters or remains unlawfully in a building when he is aware that he is not licensed or privileged to do so (see Penal Law § 140.00 [5]).
Upon a factual review of the record, I find that defendant’s conviction for criminal trespass in the third degree was against the weight of the evidence. An individual “who enters upon premises accidentally, or who honestly believes that he is licensed or privileged to enter, is not guilty of any degree of criminal trespass” (People v Basch, 36 NY2d 154, 159 [1975]).
It was the prosecution’s burden to prove unlawful entry or remaining, and the testimony of Marte, standing alone, was insufficient to prove beyond a reasonable doubt that defendant “knowingly enter[ed] or remain[ed] unlawfully,” without license or privilege, in the subject building (Penal Law §§ 140.10 [a]; 140.00 [5]; see People v Basch, 36 NY2d at 159). Although Marte testified that defendant was unable to provide the apartment *78 number for his “aunt,” the inability to provide the arresting officer with the explanation she sought “has no logical bearing on the adequacy of the proof’ that defendant remained unlawfully in the building (Matter of James C., 23 AD3d 262, 264 [1st Dept 2005]). Moreover, it was not his obligation to provide the arresting officer with an explanation for his presence in the building (id.; see Matter of Daniel B., 2 AD3d 440, 441 [2d Dept 2003]).
Defendant’s testimony at trial was corroborated by Ms. Holder in that he was her invited guest on the day he was arrested. His testimony that he was visiting his “aunt” and mistakenly believed she lived on the 18th floor of that building coupled with Ms. Holder’s testimony was sufficient to support his reasonable belief that he was licensed or privileged to be in the building. Therefore, his belief, even if mistaken, negated the element of “knowingly and unlawfully remaining” (see People v Basch, 36 NY2d at 159).
Accordingly, the judgment of conviction is reversed, the accusatory instrument is dismissed, and the fine and surcharge, if paid, are remitted. In light of this determination, we need not reach defendant’s remaining contentions.